**G–69, a/k/a DG–2, and his wife, Plaintiffs,**

v.

**John DEGNAN, et al., Defendants.**

**Civ. No. 86–3282(SSB).**

United States District Court,
D. New Jersey,
Camden Vicinage.

Jan. 22, 1990.

See also, D.C., 130 F.R.D. 339.

Pamela W. Higgins, Sprague, Higgins & Creamer, Collingswood, N.J., for plaintiffs.

Bernard F. Conway, Sean Deverin, Giblin, Combs, Cooney & Conway, Morristown, N.J., for "Attorney General Defendants": John Degnan, Irwin I. Kimmelman, Barry Goas, David Brody and Donald Belsole.

George F. Kugler, Jr., John C. Connell, Archer & Greiner, Haddonfield, N.J., for "State Police Defendants": Clinton L. Pagano, Louis Taranto, Justin Dintino, Robert Winters, Joseph Guzzardo, Estate of William P. Sullivan, Joseph Calabres and John Bogdan.

Robert J. Del Tufo, Atty. Gen. of the State of N.J. by Madeline W. Mansier and Jerry Fischer, Deputy Attys. Gen., Trenton, N.J., for Intervenor State of N.J.

## OPINION

JEROME B. SIMANDLE, United States Magistrate:

This matter is before the court upon motion of the State of New Jersey, as intervenor,[1] for a protective order that 63 documents not be disclosed, pursuant to Rule 26(c), Fed.R.Civ.P., claiming a criminal investigative privilege.

### I. *Factual Background and Procedural History*

This action is brought under 42 U.S.C. § 1983 and pendent state causes of action by an individual, code-named plaintiff G–69, who allegedly acted as a paid informant for the State of New Jersey in its investigation of criminal activities in the casino gaming industry in Atlantic City, particularly with

---

1. The State of New Jersey's motion for intervention for the limited purpose of seeking this protective order was granted, pursuant to Rule 24(a)(2), Fed.R.Civ.P., subject to certain conditions, by Order filed February 23, 1988. The State of New Jersey and its agencies, the Division of Gaming Enforcement, the Department of Law and Public Safety, and the New Jersey State Police, were previously dismissed for failure to state a claim, by Opinion and Order entered March 2, 1987.

respect to organized crime. Plaintiff claims that the defendants, who are present and former officials of the New Jersey State Police and the New Jersey Attorney General's Office,[2] breached an agreement to compensate him for his employment as an informant and to provide him with certain benefits if his status as an informant were revealed. He alleges that his status as an informant against members of organized crime became known and that he was required to relocate, with his wife, with no new identity or protective cover, at a distant place, and he seeks damages in this lawsuit. His claims include violation of 42 U.S.C. § 1983 through deprivation of the right to travel, and for breach of contract and misrepresentation arising under New Jersey law.

On July 23, 1987, prior defense counsel responded to plaintiffs' request for production of documents by producing several hundred pages of reports and memos from defendants' files regarding plaintiff's informant status and activities. Additionally, defense counsel identified 63 documents which were withheld from production on his assertion of "a claim of privilege based on the fact that they contain the names, addresses and relevant facts pertaining to other criminal investigations and informant activities involving organized crime in the State of New Jersey," [Letters of Deputy Attorney General Williams, dated July 23, 1987.] These documents are in two groupings, Section A (which are allegedly memoranda/reports concerning interviews with G–69), and Section D (which are allegedly writings regarding the use of G–69 as an informant). Protection was originally sought for the following documents: Section A: A–1 through A–54; Section D: D–10, 11, 209, 210, 213, 216, 220, 222 and 223. For each protected document which is the subject of this motion, prior defense counsel disclosed an index of privileged documents, reciting the author, recipient, date and page length, but not describing contents or subject matter other than as a report, memorandum or letter.

Although compelled to do so by court orders, prior defense counsel took no action to move for a protective order as to the withheld documents, claiming that a conflict of interest in representation of these two groups of defendants had surfaced. Eventually, pursuant to this court's Order filed November 13, 1987, prior counsel was compelled to withdraw and new counsel were separately substituted on behalf of the "State Police Defendants" and the "Attorney General Defendants" groupings,[3] in a manner so as to ameliorate any perceived conflict of interest in joint representations.

The November 13 Order also directed that all claims of privilege as to these withheld documents would be deemed waived unless a motion for protective order was promptly sought. The Order also directed that when the motion is filed, "redacted copies of such documents shall be furnished to plaintiffs' counsel to the extent that such redactions of privileged information are feasible."

The movant, State of New Jersey, subsequently filed the present motion but initially made *no* redactions or disclosures of portions of the allegedly privileged documents. An Order filed February 23, 1988, required the movant to disclose whether anyone on behalf of the State had reviewed the documents for redaction prior to filing the motion, and to explain why it did not appear feasible to serve edited copies of the documents upon plaintiffs' counsel, and to re-examine the documents to provide such redacted copies to plaintiffs' counsel in connection with this motion.

Again, in response, the State took no further steps to sever privileged and non-privileged portions of documents. The Affidavit of Deputy Attorney General Williams, dated February 29, 1988, states his view, on behalf of the State, that redaction was not feasible, stated in ¶¶ 3 and 4:

---

**2.** The "State Police Defendants" are Clinton L. Pagano, Louis Taranto, Justin Dintino, Robert Winters, Joseph Guzzardo, Estate of William P. Sullivan, Joseph Calabrese and John Bogdan. The "Attorney General Defendants" are John Degnan, Irwin I. Kimmelman, Barry Goas, David Brody and Donald Belsole.

**3.** *See* note 2, *supra.*

... I did review [the 63 documents] in order to assess the feasibility of removing privileged information. The documents in question are investigative reports which mention plaintiff's name or a name being used by him at the time. Each investigative report contains literally dozens and dozens of names, addresses, undercover operations, and locations of State Police investigative efforts. If one were to remove or block out the information which my client wanted kept confidential, the remainder of each document would be incomprehensible.

...

... I recognize that redaction is appropriate under certain conditions. These documents contain too much material of a confidential nature to be of any use following redaction.

In support of its motion, the State submitted the documents for *in camera* inspection, together with a short "letter brief" asserting an "executive privilege" in confidential law enforcement materials. No affidavit was received asserting the factual basis for the claim of executive privilege as to each document or group of documents, nor did the movant's former counsel, Deputy Attorney General Scheindlin, appear at the original oral argument in this motion, when all other counsel appeared and argued.

The State Police Defendants have argued that the court should permit discovery of certain nonprivileged factual information contained in twelve of the documents, namely: A–34, A–35, A–47, A–48, A–49, A–50, A–51, D–11, D–209, D–210, D–220 and D–222, as these defendants themselves hope to use information in these enumerated documents. Of these enumerated documents, subsequent disclosures by the State have been made of documents A–34, A–35, A–47, A–50, and A–51 resulting in narrowing to seven documents the subset for which the State Police Defendants seek disclosure, as discussed below.

Subsequently, former Assistant Attorney General Eugene J. Sullivan entered his appearance on behalf of the State as intervenor. As a result of discussions and further review in early 1989, the State at last furnished partially redacted copies of some of the documents in issue, so as to moot in part, or at least to narrow, the issues before the court. See Sullivan Letter dated April 4, 1989. The State then provided redacted copies of the following documents, which have also been submitted to the court [hereinafter the "redacted documents"]:

A–1

A–6

A–9 through A–12

A–15 through A–144

A–46 through A–48

A–50 through A–53

*and*

D–213

D–222

D–225

It is noteworthy that Mr. Sullivan's April 4, 1989 letter also said that all documents were being furnished in redacted form, except for documents A–49 (a Division of Gaming Enforcement document) and D–220 (an FBI document). This was an incorrect representation by Mr. Sullivan, later acknowledged at the April 21, 1989 hearing and corrected in his May 5, 1989 letter, discussed below.

At oral argument on April 21, 1989, the court was advised by plaintiffs' counsel, Pamela Higgins, Esquire, that the production of the redacted documents did not moot the dispute as to those documents, because plaintiffs challenge the deletions and they seek the deleted information. [Transcript, April 21, 1989 at 15–16.] The State's position was to provide the statements of G–69 himself to law enforcement authorities as excerpts from the otherwise allegedly confidential law enforcement documents. This represented a change of position, following upon earlier suggestions of the court toward resolving the dispute.[4]

---

4. At hearings in November, 1987 and February, 1988, it was suggested to the State's former attorney, Deputy Attorney General Williams, that verbatim statements of G–69 were relevant and discoverable and should be provided at a minimum. See Transcript of April 21, 1989 at 32.

Further, on May 5, 1989, the subject of the withheld and redacted documents was addressed by Assistant Attorney General Sullivan's letter of that date. The May 5, 1989 Sullivan Letter reflected the decision of the State Police to produce the actual statements of G–69, and it enclosed a complete set of the documents at issue, for *in camera* inspection, including clear delineations inside red boxes of the portions of materials already disclosed to plaintiffs. Mr. Sullivan also submitted the supporting Affidavits of Donald R. Macciocca and James H. Convery, dated May 5, 1989, addressing the present dispute and related document production disputes. Supplemental opposition from Ms. Higgins, dated May 10, 1989, has also been reviewed, together with a reply from Mr. Sullivan, dated May 11, 1989.

Later, at a hearing on June 15, 1989 in connection with cross-motions related to contempt proceedings against two witnesses, further arguments were heard concerning the State's document production and redaction efforts. Mr. Sullivan took the position that the State had disclosed to plaintiff everything related to him and his licensure, contract relocations and other personnel-type matters, but not documents disclosing the State's law enforcement activities in criminal matters in which plaintiff had furnished information.

Significantly, the May 5th submission also narrowed the dispute, indicating that several additional documents would be furnished to plaintiffs' counsel without redactions, namely A–52, D–212 and D–213.

The status of document production and redaction with respect to these documents is summarized in the following chart:

| Document No. | Status | Comments |
| --- | --- | --- |
| A–1 | Redacted in Part | |
| A–2 | Withheld | |
| A–3 | Withheld | |
| A–4 | Withheld | |
| A–5 | Withheld | |
| A–6 | Redacted in Part | |
| A–7 | Withheld | |
| A–8 | Withheld | |
| A–9 | Redacted in Part | |
| A–10 | Disclosed | Attachment Withheld |
| A–11 | Disclosed | |
| A–12 | Redacted in Part | Attachment Withheld |
| A–13 | Withheld | |
| A–14 | Redacted in Part | |
| A–15 | Redacted in Part | |
| A–16 | Disclosed | |
| A–17 | Disclosed | |
| A–18 | Disclosed | |
| A–19 | Redacted in Part | |
| A–20 | Disclosed | |
| A–21 | Disclosed | |
| A–22 | Redacted in Part | |
| A–23 | Disclosed | |
| A–24 | Redacted in Part | |
| A–25 | Disclosed | |
| A–26 | Redacted in Part | |
| A–27 | Disclosed | |
| A–28 | Disclosed | |
| A–29 | Disclosed | |
| A–30 | Disclosed | |
| A–31 | Disclosed | |
| A–32 | Redacted in Part | |
| A–33 | Disclosed | |
| A–34 | Disclosed | |

| Document No. | Status | Comments |
|---|---|---|
| A-35 | Disclosed | |
| A-36 | Redacted in Part | |
| A-37 | Redacted in Part | |
| A-38 | Redacted in Part | |
| A-39 | Redacted in Part | |
| A-40 | Redacted in Part | |
| A-41 | Redacted in Part | |
| A-42 | Disclosed | |
| A-43 | Redacted in Part | |
| A-44 | Redacted in Part | |
| A-45 | Withheld | |
| A-46 | Redacted in Part | |
| A-47 | Disclosed | |
| A-48 | Redacted in Part | Sought by State Police Defendants |
| A-49 | Withheld | Sought by State Police Defendants |
| A-50 | Disclosed | |
| A-51 | Disclosed | |
| A-52 | Disclosed | |
| A-53 | Redacted in Part | |
| A-54 | Withheld | |
| D-10 | Withheld | |
| D-11 | Withheld | Sought by State Police Defendants |
| D-209 | Withheld | Sought by State Police Defendants |
| D-210 | Withheld | Sought by State Police Defendants |
| D-212 | Disclosed | |
| D-213 | Disclosed | |
| D-216 | Withheld | |
| D-220 | Withheld | Sought by State Police Defendants |
| D-222 | Redacted in Part | Sought by State Police Defendants |
| D-225 | Redacted in Part | |

## II. *Discussion of Law*

The plaintiff is entitled to discovery of all relevant, non-privileged information, subject to considerations of the proportionality of the discovery sought to the legitimate needs of the parties and the issues in the case, pursuant to Rule 26(b)(2), Fed.R. Civ.P.

The State intervenor, as the party seeking a protective order, has the burden of demonstrating the precise manner in which the withheld documents are privileged. *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N. Y.1988) [Weinstein, J.] and cases cited therein.

It is not sufficient to merely state a generalized objection; instead, the objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir.1982). 8 Wright & Miller, *Federal Practice and Procedure* § 2035 at 264–265.

The claim of privilege in this section 1983 case is adjudicated with reference to the federal common law, by operation of Rule 501, Federal Rules of Evidence.[5]

5. Fed.R.Ev. 501 provides:
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The law enforcement privilege, sometimes called the "official information privilege," in federal law is a qualified privilege requiring a sensitive weighing of the interest of the government ensuring the secrecy of the documents in question as opposed to the need of the adverse party to obtain the discovery, *see generally United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980). The inspection of files maintained by law enforcement authorities defending a civil rights claim is, of course, controlled by federal law. *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J.1987); *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973); *Kelly v. City of San Jose*, 114 F.R.D. 653, 655 (N.D.Cal.1987); *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.1988). The claim for such a privilege is somewhat stronger with respect to protecting evaluative opinions as contrasted with facts [*see Jupiter Painting Contracting Co. v. United States*, 87 F.R.D. 593 (E.D.Pa.1980)], with respect to protecting ongoing investigations as contrasted with closed files [*see Jabara v. Kelley*, 75 F.R.D. 475, 493 (E.D.Mich.1977)], with respect to protecting decisions to prosecute as contrasted with decisions not to prosecute [*see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Jupiter Painting Contracting Co., Inc. v. United States, supra*, 87 F.R.D. at 599], with respect to protecting confidential informant identities as contrasted with names of incidental witnesses [*see Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957) *and United States v. O'Neill, supra*, 619 F.2d at 229]; and with respect to protecting confidential law enforcement methods and tactics as contrasted with simple interview materials [*see Frankenhauser v. Rizzo, supra*, 59 F.R.D. at 344; *Kelly v. City of San Jose, supra*, 114 F.R.D. at 666 and *King v. Conde, supra*, 121 F.R.D. at 192 (with respect to police procedural guides)].

The considerations have been stated in different formulations by the various courts considering this issue, such as in *Scouler v. Craig, supra*, 116 F.R.D. at 496 (quoting *Frankenhauser v. Rizzo, supra*, 59 F.R.D. at 344).[6]

One dispute permeating this motion is the degree to which G–69 should be entitled to receive law enforcement files in investigative matters in which he was an informant. [This issue is discussed more thoroughly in the forthcoming Opinion regarding the State's motion for protective order to bar production of criminal investigation files of non-parties about whom G–69 gave information.] Discovery relating to the use which law enforcement authorities made of G–69's information is sought in order to establish his value to the law enforcement effort. The State has argued that the withheld documents concern other efforts made by the State in matters where G–69 furnished information, and also internal opinions and analysis concerning the conduct of these investigations. Sullivan Letter, May 5, 1989, *supra*, at 2–3. The State

---

**6.** Judge Becker's ten factors for consideration in the context of discovery of police files in a civil rights case alleging excessive use of force in an arrest are stated in *Frankenhauser, supra*, at 344:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
(2) the impact upon persons who have given information of having their identities disclosed;
(3) The degree to which governmental self-evaluation and consequent program improvements will be chilled by disclosure;
(4) whether the information sought is factual data or evaluation summary;
(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the police investigation has been completed;
(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;
(8) whether the plaintiff's suit is non-frivolous and brought in good faith;
(9) whether the information sought is available through other discovery or from other sources; and
(10) the importance of the information sought to the plaintiff's case.

Although the *Frankenhauser* factors are useful considerations in the typical civil rights police brutality case concerning issues such as the discoverability of other citizen complaints, internal investigations and departmental discipline, other prosecutorial concerns must also be weighed in the context of the present case, as discussed in the text which follows.

argues that such information is collateral and not clearly relevant to plaintiff's claim concerning formation, performance and breach of the confidential informant contract.

Plaintiff argues that the follow-up investigatory efforts and decisions are relevant to consideration of why, in withdrawing serious criminal charges in the Sollena murder case, the State "was willing to permit G–69 to risk his life (in the sense of personal safety as well as ruining his career in the casino industry) obtaining information from organized crime members, but was unwilling to utilize that information for fear of adverse publicity regarding State Police methods," Higgins Letter, May 10, 1989, *supra*, at 1–2. Plaintiff alleges that the decisions to terminate litigation early is relevant because his contract with the state, expressed in the Memorandum of Understanding attached to the Complaint, provides that certain benefits to G–69 will be provided thorough the completion of all litigation including appeals. Plaintiff argues that the defendants' decision to drop significant criminal cases against major law enforcement targets may have been motivated by the defendants' desire to lessen their monetary obligation to G–69. *Id.*

■ Decisions reflected in these documents directly concerning G–69 and his employment as an informant would be relevant to his claims here, because they directly bear upon his employment status. But collateral decisions to terminate an investigation or prosecution having little or nothing to do with G–69's employment status would be an area of remote relevance, probably outweighed by the articulated desire to preserve the confidentiality of prosecutorial decisionmaking, independent information about organized crime figures, and law enforcement methods. The court agrees that plaintiff, in the unusual circumstances of this case, can show a particularized need for discovering whether decisions to terminate prosecutions requiring his services were made for reasons attributable to his conduct as an informant. If the withheld information concerning termination of the prosecution disclosed that plaintiff's

employment contract played a role in that decision, such fact would be discoverable here. If the documents disclose that the prosecution arose from prosecutorial decisions not involving plaintiff's employment status, then the prosecutorial reasoning would not be relevant to the plaintiff's claims here, such that the confidentiality of law enforcement decisionmaking would override plaintiff's need for the information. The court's determinations below as to specific documents apply this rationale.

There is no dispute in this case that G–69 functioned as a paid confidential informant to New Jersey law enforcement agencies, as reflected in several thousand pages of documents already furnished to plaintiff; that he so performed is not in dispute, and access to each investigative document relating to investigations in which he played some assisting role is not necessary to establish that he performed his job as he generally claims. Nonetheless, documents reflecting the timing and conditions and special nature of plaintiff's informant status would be discoverable by plaintiff, as these facts are generally known to him anyway and his role, although formerly confidential, is no longer secret.

It should also be borne in mind that the plaintiff has obtained access to thousands of pages of documents concerning the investigations into the two matters with which he is most concerned, namely the Sollena murder and the Harrah's licensing investigation, documenting plaintiff's role. If the court finds, however, that specific information directly concerning G–69's performance in those or other matters has been withheld, then the enhanced relevance of such information to the issues in this case would be carefully weighed.

■ "Statements" of G–69 are also discoverable under Rule 26(b)(3), Fed.R.Civ.P., which provides that a party may obtain a statement concerning the action or its subject matter previously made by that party, without making the required showings of substantial need and inability to obtain the substantial equivalent. The term "statement" in this rule refers to either "a written statement signed or otherwise adopted

or approved by the person making it, or a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded." Rule 26(b)(3)(A) & (B). There has already been discovery of any such writings, recordings or transcriptions of G–69's statements, and the State has provided the excerpts of the memoranda at issue here containing words attributed to G–69, even though many of the supplied excerpts do not appear to be either verbatim or contemporaneous recordations of G–69's words as formally contemplated by the rule. The court will scrutinize all withheld documents and parts to see whether any other words of G–69 have been withheld, consistent with the more expansive view of discoverable "statements" accorded by the State to these materials.

· Information concerning the hiring, payment, duties and relocation of G–69 has been disclosed by the State, and additional references to the terms of his employment withheld by the State, if any, will be heavily weighed in favor of disclosure as such facts lie at the heart of this contract dispute.

 With these factors in mind, we turn to consider the documents, listed above, which have been withheld in part (redacted documents) or withheld completely from disclosure under the State's claim of law enforcement privilege. References in this Opinion are to the documents submitted for *in camera* inspection including redactions on May 5, 1989, and these documents have been placed into a Sealed Appendix to this Opinion if necessary for future review.

*A–1* This partially redacted document is substantially verbatim to Document A–52, which has been completely disclosed. Therefore, confidentiality has been waived and *A–1* shall be disclosed to plaintiff pursuant to the accompanying Order.

*A–2* Contains no reference to plaintiff and concerns interviews of other persons; confidentiality is established and withholding is proper.

*A–3* Same characteristics as *A–2*, withholding is proper.

*A–4* This document consists of four (4) paragraphs. The first paragraph makes reference to plaintiff's performance as a confidential source in the investigation referred to in *A–1*, above. The second paragraph states the current status of the investigation. The third and fourth contain the writer's observations, opinions or conclusions. Only the first refers to plaintiff. The court holds that the *first paragraph* was improperly withheld and that it should be disclosed because it refers directly the role played by plaintiff. The *second, third* and *fourth* paragraphs were properly withheld as law enforcement analytical materials and opinions of marginal relevance to plaintiff's claim. The accompanying Order will require disclosure of the *first paragraph* of *A–4*.

*A–5* Contains no statements attributed to plaintiff and contains analysis and opinions regarding ongoing criminal investigation as to which need for confidentiality outweighs the slight relevance, if any, to plaintiff's claims. Withholding is proper.

*A–6* The disclosed portions contain plaintiff's statement or conduct. The remainder comprises interviews of other persons and references to investigative techniques and other cooperating witnesses in the investigation. The information disclosed is sufficient because the withheld portions have a confidentiality value outweighing plaintiff's need for investigatory information collateral to his own efforts. Properly withheld.

*A–7* This withheld document consists of two (2) paragraphs and mentions an attachment reflecting information developed as a direct result of information supplied by plaintiff. No attachment to *A–7* is contained in the submission. The second paragraph identifies plaintiff's status as an informant. Both paragraphs of this memorandum should be disclosed because they di-

rectly pertain to plaintiff's status and memorialize the fact that he supplied information. No opinions or techniques of law enforcement are disclosed, and the value of secrecy of *A–7* is not established. The accompanying Order will require disclosure of *A–7* to plaintiff.

*A–8* Pertains to internal follow-up investigation mentioned in *A–7* above, but no reference to plaintiff in this buck-slip type document. Properly withheld.

*A–9* Some characteristics as *A–6*, partial withholding is proper.

*A–10* *A–10* was disclosed. The attachment to *A–10* is a listing of vehicles and names of persons observed in a surveillance, with no mention of plaintiff, and it was properly withheld.

*A–11* Was completely disclosed.

*A–12* The disclosed portions contain information provided by plaintiff. The non-disclosed portions consist of information from another agency's investigation independent of plaintiff, and they contain analysis of information not of relevance to plaintiff's claims. The addendum to *A–12* was properly not disclosed, as it contains internal casino memoranda involving labor-management issues and collective bargaining, the facts of which are not relevant to plaintiff's case.

*A–13* Contains no statements by plaintiff, in an interview of another person cooperating with law enforcement efforts. Not particularly relevant to plaintiff's informant status. Properly withheld.

*A–14* The portions withheld from disclosure includes opinions and evaluations of law enforcement authorities based on information from other agency and other sources, the withholding of which is proper.

*A–15* The portion withheld concerns surveillance observations and law enforcement methods not involving plaintiff. Properly withheld.

*A–16, 17, 18* Were completely disclosed.

*A–19* The portion withheld contains personal information developed from other sources, not plaintiff, concerning the subject of an investigation. Properly withheld.

*A–20, 21* Were completely disclosed.

*A–22* The portion withheld consists of two sentences reflecting investigative information and action taken by investigators not involving plaintiff. Properly withheld.

*A–23* Was completely disclosed.

*A–24* Portion disclosed consists of surveillance information developed by investigators disclosing techniques, observations, analysis, except that the *last two sentences* of the *first paragraph* discuss something that plaintiff did and said during the course of the surveillance. These *last two sentences* were not properly withheld and must be disclosed to plaintiff, as required by the accompanying Order.

*A–25* Was completely disclosed.

*A–26* The portion withheld consists of one paragraph containing information developed from another law enforcement agency concerning a subject of criminal investigation, not directly related to plaintiff's work. Properly withheld.

*A–27 through A–31* Were completely disclosed.

*A–32* The withheld portion consists of three short paragraphs, of which only two contain substantive information. Although the two paragraphs concern a discussion with another state agency's inspector, that discussion concerns itself with facts directly germane to plaintiff's employment as a confidential informant and, in one respect, with monitoring plaintiff's status. It is not apparent that any harm would come from disclosure of this information, which is hereby held to be of sufficient relevance to require disclosure. The three short paragraphs were not properly withheld and shall be disclosed to plaintiff, as required by the accompanying Order.

*A–33 through 35* Were completely disclosed.

*A–36* The withheld portions consist of independent interviews and investigation materials in nature of follow-up to plaintiff's information, but not referring to plaintiff or his informant status, and not relevant to the claims in his case. Properly withheld.

*A–37* The withheld portions contain detailed investigation techniques and discussion of surveillance plans not involving plaintiff, and they contain extensive information about a cooperating source and an undercover investigation. There is a reference to plaintiff's informant status and employment on page 3, first paragraph, sixth sentence [begins "At the . . ."] continuing through the ninth sentence; this excerpt should have been disclosed because it is relevant to change in plaintiff's informant status. The remainder of the undisclosed portions concern tactics and analysis of benefits of different proposed undercover operation and was properly withheld. The indicated four sentence excerpt, appearing on *page 3, first paragraph, sentences six through nine*, will be required to be disclosed by the accompanying Order.

*A–38* The withheld portion consists of one sentence of tactics and surveillance information not discoverable here because not concerning plaintiff or plaintiff's conduct as informant. Properly withheld.

*A–39* The withheld portion consists of four sentences of investigation from independent sources, not concerning plaintiff or plaintiff's conduct as informant. Properly withheld.

*A–40* The withheld portions consist of analysis of interview and subpoenaed records not concerning plaintiff or plaintiff's conduct as informant. Properly withheld.

*A–41* The withheld portions consist of two sentences involving arrangements with another law enforcement agency and future investigative plans not concerning plaintiff. Properly withheld.

*A–42* Was completely disclosed.

*A–43* Six paragraphs were withheld consisting of interview of a witness, the disclosure of a confidential source, and intelligence information from background check, not concerning plaintiff or plaintiff's conduct as informant. Properly withheld.

*A–44* The single withheld paragraph concerns proposed communication with another agency involved in investigative efforts, without reference to plaintiff or plaintiff's conduct as informant. Properly withheld.

*A–45* This three-paragraph document consists of information from a person interviewed by law enforcement personnel. The first paragraph contains information concerning a person whose name has surfaced as a probable witness in plaintiff's case concerning the claims he has asserted in this lawsuit, and that information is probably not confidential and should be disclosed. The second paragraph concerns the statement of this witness concerning an event or conduct participated in by plaintiff in his informant status, and this information is highly relevant to plaintiff's claims. The third paragraph concerns the witness's recollection of a conversation at another time not involving or concerning plaintiff, which was information gathered for purposes of ongoing criminal investigation for which plaintiff does not have substantial need. Therefore, only the *first and second paragraphs* were not properly withheld and shall be disclosed to plaintiff pursuant to the accompanying Order.

*A–46* The withheld portions consist of investigative information developed from independent sources and another police agency, not involving plaintiff or plaintiff's informant status. Properly withheld.

*A–47* Was completely disclosed.

*A–48* The disclosed portion relates to plaintiff's informant status; the withheld portion consists of one paragraph of planned investigative steps relevant

to the Sollena murder investigation, including proposed testimony of plaintiff. This information, although somewhat evaluative, is not properly withheld because it describes directly plaintiff's performance as an informant-witness in a major case. Therefore, the *second paragraph* of this report was not properly withheld, and disclosure is required pursuant to the accompanying Order.

*A–49* This withheld memorandum consists of a prosecutor's analysis of the results of an interview with plaintiff on February 25, 1985. Statements attributed to plaintiff concerning his role as an informant and the information he developed in that role are intertwined with the prosecutor's discussion of these statements. Plaintiff has a right to obtain such references to his own statements in order to develop his case here. The State Police defendants, in seeking disclosure of *A–49*, have also demonstrated the clear relevance of this document to their defense. The document also refers, on page 4, to an instance of plaintiff's unwillingness to cooperate in an investigation. The State has not sustained the need for confidentiality of this document against these competing concerns, and disclosure of *A–49* in its entirety will be required under the accompanying Order.

*A–50 through A–52* Were completely disclosed.

*A–53* Same circumstances as *A–36*. Properly withheld.

*A–54* Entire document consists of interviews of independent sources, with no statements by plaintiff and no information regarding plaintiff or his informant status. Properly withheld.

*D–10* This document is a cover memo to *D–11* and is of routine nature, not disclosing sensitive information, relating to conduct of plaintiff in undercover capacity. Insufficient reason has been given for withholding, and *D–10* shall be disclosed to plaintiff in its entirety pursuant to the accompanying Order.

*D–11* This document concerns a consensual recording made by plaintiff in his informant capacity, presenting an officer's observations of the contents of the target's conversation with plaintiff. This consists of nine paragraphs and an attachment. The first three paragraphs concern the purposes and outcome of the consensual recording, and they are properly discoverable here. The remaining six paragraphs are the author's observations and suggestions, including characterizations of the attachments, one of which is the reconstruction of plaintiff's taped conversation with a target of the investigation. The other attachment is a "Synopsis of Individuals" naming and briefly describing ten individuals whose names (in most cases) surface in the conversation between plaintiff and the target, but which "Synopsis" was prepared by independent State Police information. The court finds: (a) that the *first three paragraphs* are discoverable because they describe the conduct of plaintiff in his undercover capacity; (b) that the remaining *six paragraphs* are not discoverable because they discuss investigative and prosecutorial tactics and plans and express opinions which do not concern plaintiff's participation; (c) that the attachment entitled *"Synopsis of Individuals"* is *not* discoverable because it is compiled from independent State Police information, not plaintiff; and (d) that the *untitled attachment* summarizing the points of plaintiff's conversation with the target *is* discoverable because, in the absence of an actual transcript, it suggests the breadth and quality of information obtained by plaintiff at a late point in time (March, 1985), and the accompanying Order will so provide.

*D–209* Substantially verbatim with *A–45* above, and shall be disclosed to the *same extent as A–45*, as provided in the accompanying Order.

*D–210* Although this document was entirely withheld, it is apparent that it should have been disclosed because it is a brief summary of plaintiff's infor-

mant activities from December 1979 through May 1984, which has not been shown to be prejudicial to any ongoing investigation nor to be especially revelatory of information otherwise undisclosed in this case. The accompanying Order will require *full disclosure.*

*D–212 and 213* Were completely disclosed.

*D–216* This document was properly withheld, as it concerns investigative assignments of State Police and DGE personnel, listing steps to be taken in criminal investigations, with no mention of plaintiff or of duties to be performed by him. Properly withheld.

*D–220* This FBI document is an interview of plaintiff containing paraphrases of his statements without analysis or impressions of the interviewer. The plaintiff is entitled to his own statement of facts, and this short statement taken in August, 1984, would not appear to jeopardize any investigation going forward at the present time, 5½ years later. It is also similar in content to the previously disclosed portion of *D–222,* below. Disclosure in *full* will be required by the accompanying Order.

*D–222* The disclosed statements of plaintiff in this document are flanked by withheld comments by the prosecutor evaluating evidence and weighing strategies. There is discussion of other prosecutors' offices and ongoing investigations and recommendations for future courses of action to follow, with lists of potential witnesses and "Issues to be Resolved." All of the withheld material is confidential prosecutorial analysis and were properly withheld, except that *"Issues to be Resolved" ¶ 3* directly concerns plaintiff's informant status and is discoverable by him in accordance with the accompanying Order.

*D–225* A brief statement was withheld containing sensitive law enforcement information of no known relevance to plaintiff's case, which cannot be more precisely discussed in this Opinion without disclosing the information itself. Properly withheld.

For these reasons, and to the extent above, the State shall disclose the documents as indicated within fourteen (14) days of today's date.

### III. Conclusion:

*Disclosure Pursuant to Confidentiality Order*

The disclosure to plaintiff's counsel of the documents or portions thereof listed above will be required within fourteen (14) days of today's date under the accompanying Order. This disclosure shall be made under the terms of a Confidentiality Order governing the disclosure and use of this information. The terms of the Confidentiality Order, which is entered pursuant to Rule 26(c), Fed.R.Civ.P., are set forth in the accompanying Order, namely:

1. The documents or portions to be disclosed to plaintiff pursuant to this Order shall be marked "Confidential Pursuant to Court Order" by the State as Intervenor.

2. Materials thus marked may be disclosed to plaintiffs, defendants and their attorneys of record and their staffs, and the experts or consultants retained for this litigation; these recipients may make no further disclosure of the designated documents or the confidential information contained therein to other persons.

3. These materials may be used only for purposes of this litigation and for no other purpose.

4. The use of these materials at trial may be pursuant to stipulation of counsel, including counsel for the State as Intervenor, or pursuant to further Order of the Court in the absence of stipulation.

5. All copies of such materials shall be returned to counsel for the State within thirty (30) days after the conclusion of this litigation.

6. Parties, experts or litigation consultants authorized above to receive these designated materials pursuant to this Confidentiality Order shall,

prior to receiving such documents, acknowledge and agree to adhere to the restrictions contained in this Confidentiality Order by signing and dating a copy hereof, which shall be retained by the attorney disclosing such documents to his or her client, expert or consultant, as the case may be.

The Confidentiality Order is justified by the special nature of these materials, most of which involves law enforcement efforts against organized crime figures who themselves would not have access to such information. The information being disclosed under this Opinion and Order is sensitive law enforcement material not publicly available, for obvious reasons discussed above relating to the continuing efforts to investigate organized crime in this state. The plaintiff has shown a particularized need arising from his special claims in this litigation; his need for and discovery of these documents do not dissolve the overall protection of these materials from public dissemination. The plaintiff is entitled to these sensitive materials because of his special need. Until further Order of the court, the materials are not to be made generally available for use outside the restrictions of the this Confidentiality Order, *accord King v. Conde, supra,* and *Kelly v. City of San Jose, supra.* This limitation does not impair the rights of counsel for the litigants before this court to obtain relevant discovery and to prepare their cases. It does, however, prevent the unnecessary disclosure of these documents to persons not governed by the Confidentiality Order and it precludes the use of this information for purposes other than this litigation. If it becomes necessary to use portions of these documents at trial, the proponent of such use shall first seek consent of counsel for the State as Intervenor, and, failing same, move before the court for an appropriate Order permitting such use.

The accompanying Order and Confidentiality Order is entered.