**Juan TORRES, et al., Plaintiffs,**

v.

**W. KUZNIASZ, et al., Defendants.**

**Civil No. 95–5778.**

United States District Court, D. New Jersey.

Aug. 20, 1996.

Charles N. Riley, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Haddonfield, NJ and Philip S. Fuoco, Haddonfield, NJ, for the Plaintiffs.

Emil J. Nell, IV, Office of City Attorney, Camden, NJ, for Defendants W. Kuzniasz, D. Vause, George D. Pugh, Edward Eldred, and the City of Camden.

Susan L. Olgiati, New Jersey Attorney General's Office, Trenton, NJ, for Defendant Glenn Poepel.

## OPINION

KUGLER, United States Magistrate Judge:

Before the court are two motions on behalf of Defendants in the above-referenced case. The first motion is brought before the court by Defendants W. Kuzniasz, D. Vause, George D. Pugh, Edward Eldred, and the City of Camden ("the Camden defendants") for two forms of relief. First, the Camden defendants seek a modification of this court's order compelling Camden to produce its Internal Affairs investigations for the years 1988 through 1996. The defendants seek to reduce the time period of the order to two years prior to the incident involving Plaintiff Torres. Second, the Camden defendants seek a protective order for certain documents and information within these Internal Affairs investigation files. Plaintiffs seek their costs and attorneys' fees incurred in opposing this motion.

The second motion is brought before the court by Defendant Glenn Poeppel, a New Jersey State Trooper, for a protective order for the New Jersey State Police internal investigation report compiled as a result of the assault complaint filed by Plaintiff Juan Torres.

■ On July 29, 1996, the Camden Policemen's Benevolent Association Local No. 35 and Camden Organization of Police Superiors filed a motion to intervene in this motion in support of the Camden defendants' position. Because these entities did not explain under what authority they move for intervention on a motion for a protective order, nor did they submit argument in support of their position, but rather stated that they rely upon the answers and briefs submitted by Defendant City of Camden, their motion shall be **DISMISSED**.

BACKGROUND

According to the Consolidated and Amended Class Action Complaint filed January 29, 1996, Plaintiffs Jose Clemente, Juan Torres, Kay Martinez, Prentice Rosario, Luis Arzola, and Edwin Luna, individually and on behalf of all others similarly situated, allege pursuant to 42 U.S.C. § 1983 that the City of Camden and its policy-making officials violated the plaintiffs' constitutional rights by failing to properly train their police officers in the use of force, failing to take adequate precaution in hiring and retention of their police officers, failing to establish adequate policies, training, and procedures regarding the acceptance and investigation of citizen complaints against police officers, and failing to establish policies and training regarding the treatment of emotional or overwrought citizens. (Compl., para. 72–92.) Plaintiffs also allege negligent supervision against the City of Camden, the Camden Police Department, and George D. Pugh, Chief of Police of the Camden Police Department. (Id., para. 93–97.) Individual Camden police officers also were named as defendants on allegations of assault, battery, and excessive use of force. (Id., para. 98–105.) Plaintiffs seek as relief compensatory, exemplary, and punitive damages, attorneys' fees and costs, a declaration that the defendants' policies violate the plain-

tiffs' constitutional rights, and an injunction requiring the defendants to establish written policies which provide a means for citizens to safely complain about police procedure. (*Id.*, at 21.) The purported class consists of all persons who have attempted to file a police misconduct complaint against a member of the Camden City Police Department and all persons who attempt to do so in the future. (*Id.*, para. 20.)

## CAMDEN DEFENDANTS' MOTION

### A. *Statute of Limitations*

Defendants argue that since the statute of limitations for civil rights actions is two years, the only relevant documents supporting the plaintiffs' claims are those spanning the two-year time frame prior to the incident on November 10, 1993 involving Juan Torres which gave rise to the filing of this lawsuit.[1] Thus, according to the defendants, the court's order directing the Camden defendants to produce their Internal Affairs investigation files for the years 1988 through the present is overbroad and outside the scope of relevant evidence.

■ In order to prove municipal liability under § 1983, a plaintiff must prove that the alleged constitutional violation resulted from an official policy or an unofficial custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.* (citations omitted). Custom may also be established by "evidence of knowledge and acquiescence." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989),

*cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989). Thus, to sustain a § 1983 claim for municipal liability, the plaintiff must "simply establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir.1990).

■ In *Beck v. City of Pittsburgh*, 89 F.3d 966, (3d Cir.1996), the Third Circuit found civilian complaints highly relevant to the plaintiff's burden of proving that the City of Pittsburgh had a custom of permitting its police officers to use excessive force in the performance of their duties, and, on appeal of a judgment as a matter of law under Fed. R.Civ.P. 50(a), the court considered as evidence a number of such complaints which spanned a time period longer than two years prior to the incident giving rise the plaintiff's complaint and complaints involving officers other than the officer who allegedly violated Plaintiff Beck's constitutional rights. *Id.* at *8–9. The complaints included incidents that occurred after Beck's experience, since such complaints "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force." *Id.* at *7.

Accordingly, because documentation of civilian complaints and the police department's resultant investigations are relevant and necessary to the plaintiffs' burden of establishing the requisite policy or custom and causation required for municipal liability under § 1983, and because documents which span a number of years and involve many Camden police officers may be necessary to establish such a policy or custom, under the reasoning of *Beck*, the defendants' request to limit this court's order to a two-year time period shall be **DENIED**.

---

**1.** An individual action filed by Plaintiff Juan Torres on November 1, 1995, Civ. No. 95–5778, was consolidated with the subsequently filed individual actions involving Plaintiff Kay Martinez, Civ. No. 95–5809, Plaintiff Luis Arzola, Civ. No. 95–5810, and Plaintiff Prentice Rosario, Civ. No. 95–5811. These actions were consolidated under the Torres case by the Honorable Jerome B. Simandle. (*See* Order dated 11/13/95.) The Consolidated and Amended Class Action Complaint, including these four plaintiffs along with other named plaintiffs, was filed January 29, 1996.

**B.** *Protective Order for Privileged Documents*

In addition to their argument that the statute of limitations limits the scope of their production, the Camden defendants refused to turn over certain Internal Affairs documents on the basis of privilege. Plaintiffs' counsel, Charles N. Riley, Esq., has submitted a certification in which he explains what information the plaintiffs have received from the Camden defendants, and what information they have not received. According to Mr. Riley, the plaintiffs have received "non-internal affairs records relating to the arrest of the named plaintiffs, certain redacted internal affairs index sheets, and partial copies of the Attorney General's Police Guidelines and the Camden Police Manual." (Riley Certif., para. 2.) These documents, argue the plaintiffs, constitute the type of discovery that is routinely produced to defendants in municipal court cases, including police reports, medical records, and materials provided in plaintiffs' tort claim notices, and the only Internal Affairs information that was provided were redacted index sheets which contain only the dates on which civilian complaints were filed. What the plaintiffs have not received are documents within the following categories: "internal affairs files, internal affairs investigation reports, personnel files, Annual Reports to the Prosecutor, Internal Affairs File Cards, or any Memoranda or Communications of the Camden police regarding internal affairs investigations." (*Id.*, para. 6.)

In their brief in support of their motion for a protective order, the Camden defendants list ten privileges which they claim apply to protect the withheld documents from disclosure:

1. Self-critical analysis privilege;
2. Law enforcement privilege;
3. Executive/official information;
4. Privilege to Freedom of Information Act—28 U.S.C. § 1343
5. Informant's Privilege
6. Hughes Executive Order # 48
7. Attorney General Guidelines for Internal Affairs Mandate of Confidentiality

8. "Officer's Privilege" pursuant to *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)
9. Fifth and Sixth Amendments to the United States Constitution as it pertains to the respective criminal actions against officers accused of criminal conduct; *Brown v. Thompson*, 430 F.2d 1214 (5th Cir.1970); *Loque [Logue] v. Milwaukee Police Department*, 428 F.Supp. 108 (E.D.Wis.1977)
10. Camden Police Department Rules and Regulations Re: Confidentiality of Internal Affairs Investigations

(Def.Br., at 7–8.)

The defendants have broken down the withheld documents into two broad categories: (1) individual Internal Affairs files on Plaintiffs Torres and Luna; and (2) Internal Affairs reports *en toto;* Yearly Internal Affairs Reports to the Camden County Prosecutor 1993–1995; Index Logs to Internal Affairs Reports; and Card File by Internal Affairs Listed by Officers. (Def.Br., at 9–15.) The court will first discuss the law of privileges in federal court, along with the defendants' burden with respect to asserting a privilege, and will then address the defendants' assertion of privilege for each category of withheld documents.

*1. Federal Law of Privilege*

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, any information that is not privileged is discoverable if it is relevant to the action or reasonably calculated to lead to the discovery of admissible evidence. As discussed above under the reasoning of *Monell* and subsequent Third Circuit jurisprudence, the requested Internal Affairs documentation is relevant to the plaintiffs' claims of municipal liability under 42 U.S.C. § 1983. The only question is whether the information is protected from disclosure by a privilege recognized in federal court.

▬▬ The application of a privilege in federal court is governed by Fed.R.Evid. 501 which provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege. A federal court sitting in a non-diversity case "may see fit for special reasons to give the

law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. *D'Oench, Duhme & Co. v. Federal Deposit Insur. Corp.,* 315 U.S. 447, 471, 62 S.Ct. 676, 685–86, 86 L.Ed. 956 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply." *Gannet v. First Nat'l State Bank of New Jersey,* 546 F.2d 1072, 1076 (3d Cir.1976) (quoting the Conference Committee Notes to Federal Rule of Evidence 501 (House Report No. 93–1597 on P.L. 53–595)), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). Where, as here, the complaint alleges both a federal question claim and pendent state law claims, the federal common law of privilege applies to all claims. *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 103 (3d Cir.1982); *Wei v. Bodner,* 127 F.R.D. 91 (D.N.J.1989).

■ There appears to be no continuity among federal courts regarding what privileges can be invoked by law enforcement officials when defending against a civil rights claim. Congress declined to reduce federal privilege law to a comprehensive set of rules, leaving federal courts to develop privilege doctrine on a case-by-case basis. *See Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987). Federal courts, when analyzing privilege issues in civil rights claims, may look to state law to determine what interests have inspired state privilege laws and the importance given to these interests by the state legislatures. *Id.* at 653. However, in light of the policies driving civil rights statutes, state law is necessarily not determinative of what evidence is discoverable, but rather is there to guide the courts in their assessment of the interests of the government. *Id.* at 656. "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities." *Id.*

2. *Burden of Asserting and Proving Privilege*

■ "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R.Civ.P. 26(b)(5). This District's Local Rules also require parties to assert a claim of privilege with specificity:

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in interrogatories, requests for documents or requests for admission, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed; and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked and indicate whether (a) such documents exist, or (b) such oral communications took place.

Rule 16C, General Rules of the United States District Court for the District of New Jersey ("Local Rules"). These rules place the burden of demonstrating the precise manner in which a document is privileged upon the party claiming the privilege. *G–69 v. Degnan,* 130 F.R.D. 326, 331 (D.N.J.1990). A proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted. *Wei v. Bodner,* 127 F.R.D. 91, 96 (D.N.J. 1989). The Third Circuit has rejected "broadside invocation[s] of privilege" which fail to "designate with particularity the specific documents or file to which the claim of

privilege applie[s]." *United States v. O'Neill,* 619 F.2d 222, 225 (3d Cir.1980). In addition to properly asserting a privilege, the moving party seeking a protective order for purportedly privileged documents must demonstrate that a particularized harm is likely to occur if the disputed documents are disclosed. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986); *G–69 v. Degnan,* 130 F.R.D. at 331.

With these considerations in mind, the court turns now to the two categories of documents that the Camden defendants claim are privileged and should therefore be protected from disclosure.

### i. Internal Affairs Files on Plaintiffs Torres and Luna

Defendants claim that they have produced the incident reports with respect to Juan Torres, Edwin Luna, and Jose Clemente, along with all "factual" information contained in the Internal Affairs files for these plaintiffs, and that no Internal Affairs documents exist at the Camden City Police Department regarding Jose Clemente.[2] Attached to the defendants' brief is their privilege log listing the withheld documents regarding Plaintiffs Luna and Torres. Those documents listed as privileged in the Luna matter are:

1. Special report of Patrolman Shaw, 2 pages, dated 5–21–94

2. Patrolman Treusch, 2 pages, 5–29–94

3. Confidential work product of Sgt. Richard Chandler, 4 pages, 6–8–94

4. Confidential communication between Lt. Figueroa to Chief Pugh, one page, 6–13–94

5. Confidential communication Chief Pugh to Lt. Figueroa, 1 page, 6–13–94

6. Confidential communication between Emil J. Nell IV Esquire to Internal Affairs dated 2–15–96, Attorney/Client Privilege

7. Memorandum from Sgt. McCausland, Camden County Prosecutor's Office, 1 page, 9–1–94

Those documents listed as privileged in the Torres matter are:

1. Special report of Officer Walter Kuzniasz, 2 pages, 11–15–93

2. Special report of Officer David Vause, 1 page, 11–16–93

3. Special report of Sgt. James Phillips, 2 pages, 11–21–93

4. Special report of Sgt. James Phillips, 2 pages, 11–15–93

5. Confidential work product of Sgt. Edward Eldred, 4 pages, 2–15–93

6. Confidential memo from Chief Pugh to Commander John Phoenix, 1 page, 3–7–94

7. Confidential memo from Commander Phoenix to Chief Pugh, 1 page, 3–7–94

8. Confidential Memo, attorney/client privilege, Lt. Edwin Figueroa to M. Lou Garty, Esquire, 1 page, 5–18–95

(Def.Br., Ex. A.) Within that privilege log, defense counsel stated that all the documents are protected by the self-critical analysis privilege and the application of *Garrity v. State of New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). (*Id.*)

 In their motion for a protective order, the Camden defendants now argue that the executive/law enforcement privilege protects these documents from disclosure. The federal "law enforcement" privilege, sometimes referred to as an "executive" privilege or "official information" privilege, is a qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. Its application requires a court to weigh the government's interest in ensuring the secrecy of the documents in question against the need of the adverse party to obtain the discovery. *G–69 v. Degnan,* 130 F.R.D. at 332. Judge Becker, in the widely-cited case of *Frankenhauser v. Rizzo,* listed several factors which, although not exhaustive, are useful to this determination: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the govern-

---

**2.** There is no reference as to what documents, if any, were produced with respect to the other named plaintiffs, Kay Martinez, Prentice Rosario, and Luis Arzola.

ment information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.[3] *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973). *See also G–69 v. Degnan,* 130 F.R.D. at 332 n. 6.

■ A claim of executive or law enforcement privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted "precise and certain reasons for preserving" the confidentiality of the communications. *United States v. O'Neill,* 619 F.2d at 226 (citing *Smith v. Federal Trade Commission,* 403 F.Supp. 1000 (D.Del. 1975)). Some courts insist upon specific items that must be included in this affidavit:

(1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe

the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Miller v. Pancucci,* 141 F.R.D. 292, 300 (C.D.Cal.1992) (quoting *Kelly v. City of San Jose,* 114 F.R.D. 653, 670 (N.D.Cal.1987)). The *Miller* court found the specificity of these requirements necessary "to provide a court with the information necessary to make a reasoned assessment of the weight of the interests against and in favor of disclosure," and to allow the plaintiff "a fair opportunity to challenge the bases for the assertion of the privilege." *Miller v. Pancucci,* 141 F.R.D. at 300.

■ Finally, the balancing test for determining whether the law enforcement privilege applies must be conducted with an eye towards disclosure. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). *See also Wei v. Bodner,* 127 F.R.D. at 96 ("To the extent that a privilege exists, its application should

---

**3.** One court has suggested that several of the *Frankenhauser* factors hold less weight now than they once did. First, the extensive 1983 amendment of Rule 11 of the Federal Rules of Civil Procedure allowed a court to deal with frivolous cases and, therefore, significantly diminished a defendant's ability to resist discovery on the basis that a claim is frivolous or brought in bad faith (the eighth *Frankenhauser* factor). Second, the Supreme Court's decision in *Monell v. Dept. Of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), establishing municipal liability under 42 U.S.C. § 1983 for a policy or custom changes the way a court assesses the discovera-

bility of evaluative material versus factual material and the degree to which governmental self-evaluation would be chilled by disclosure. Plaintiffs alleging municipal liability under *Monell* would be entitled to more than just factual information concerning past constitutional violations; they would also be entitled to information concerning superiors' knowledge of those violations and what, if anything, they did about them. "Thus, defendants must recognize that the 'evaluative summaries' impliedly protected under *Frankenhauser* may be highly probative in a case concerning municipal liability." *Everitt v. Brezzel,* 750 F.Supp. 1063, 1068–69 (D.Colo.1990).

be limited to those situations where the privilege serves a greater public good than the predominate principle that the courts seek the truth"); *Miller v. Pancucci,* 141 F.R.D. at 300 ("This balancing test has been moderately pre-weighted in favor of disclosure.")

In applying the *Frankenhauser* factors to their case, the defendants argue that there "is always a likelihood that aggravated assault charges could be brought against the officers" who generated the disputed documents, and therefore the officers are entitled to the constitutional guarantees of the Fifth and Sixth Amendments. There is also the likelihood that "further disciplinary action" could be taken against the officers which may force them to choose between incriminating themselves or losing their job—the decision between "the rock and the whirlpool" that was found to be a violation of the police officers' constitutional rights in *Garrity v. State of New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Defendants further argue that the factual information contained in the reports is available elsewhere, as the plaintiffs can take the deposition of those officers. Defendants maintain that any evaluative material contained in the reports is absolutely privileged under *Frankenhauser.*[4]

▬ Defendants' broad speculations of harm potentially flowing to the officers involved in generating the withheld documents are simply insufficient to support a finding of privilege under the strict standards described above. Defendants do submit a memorandum from George D. Pugh, Chief of the Camden Police Department, dated June 7, 1996 and addressed to Morris Smith, Esquire, which sets forth Pugh's belief that production of the Internal Affairs files would have a "devastating impact on this Department's ability to ferret out those who violate the public trust" and asks for Smith's help in obtaining a protective order from the court

so that Pugh can protect "the integrity of the investigative process so necessary to fulfill my obligation to this community." (Def.Ex. B.) Pugh points out that individuals offered information to Internal Affairs division with the expectation that their identities would remain confidential, and the public release of their identities would violate their trust, along with that of members of the police department who furnished information with the understanding that it would remain confidential. Aside from the harm posed to confidential informants, which is discussed *infra,* Chief Pugh does not demonstrate through this memorandum that particularized harm will result from disclosure of the withheld documents.

▬ Fifth Amendment and *Garrity* rights may not be asserted by counsel, but must be asserted by an individual. *See United States v. O'Neill,* 619 F.2d at 226. Counsel may not withhold an entire category of documents simply by standing behind their citation to *Frankenhauser.* Rather, they must clearly demonstrate to the court how the balance of the *Frankenhauser* factors weighs in favor of protection for each document. Evaluative opinions in Internal Affairs reports are not absolutely privileged by *Frankenhauser.* In fact, supervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. § 1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality. *See Beck v. City of Pittsburgh,* 89 F.3d 966, (3d Cir. 1996); *Everitt v. Brezzel,* 750 F.Supp. 1063, 1068–69 (D.Colo.1990); *Scouler v. Craig,* 116 F.R.D. 494, 497 (D.N.J.1987) ("Although defendant resists production of this information on the basis that some of the documents are evaluative and should not be produced, that argument is not sustainable under the case law. Supervisory evaluations are not shielded from disclosure unless there is a strong

4. Within their argument concerning the Internal Affairs investigation files of Plaintiffs Torres and Luna, the defendants make reference to "all previous incidences involving these specific officers and officers of the Camden City Police regarding assault and battery in the past," and argue that these documents should be protected as well because the plaintiffs cannot show "they have

had dealings with these officers before the incident in question." The court finds it difficult to respond to this assertion because the defendants do not identify exactly what documents they are withholding pursuant to this argument, nor do they assert a particular privilege and explain why it applies to protect this information. A proper privilege log would have alleviated this problem.

showing that confidentiality is vital to the decision-making process of the municipality or would otherwise substantially harm the public interest.") Defendants must demonstrate to the court that their relevancy is outweighed by the specific harm that would ensue from their disclosure, and they have not met their burden here.[5]

*ii. Internal Affairs Reports, en toto; Yearly Internal Affairs Reports to the Camden County Prosecutor 1993–1995; Index Logs to Internal Affairs Reports; and Card File by Internal Affairs Listed by Officers*

While the defendants do not specify exactly what these categories of documents entail, the plaintiffs have submitted what purports to be a portion of the deposition transcript of Captain Dennis Keegan taken on February 2, 1995 in connection with another case against Camden police officers. Plaintiffs state that Captain Keegan was the head of the Internal Affairs division of the Camden Police Department at the relevant time, and the submitted deposition testimony demonstrates what documents the police department keeps with respect to Internal Affairs investigations. According to Keegan's testimony, the police department receives municipal court complaints initiated by aggrieved citizens. (Keegan Tr., at 29.) A daily log is kept of these complaints. This daily log is kept in an annual bound book and contains the name of the complaining witness, who the witness is complaining about, the subject matter of the complaint, and the disposition of the complaint. (*Id.,* at 29–30.) A yearly report is generated from these log books which contains a summary of the same information, along with a written report. (*Id.* at 31.) In addition, a file is kept on each individual officer, which Keegan refers to as the "index card file." This card file contains the officer's name, his badge number, the date and subject matter of every complaint that was generated against the officer, the complaint's

disposition, and the Internal Affairs case number. (*Id.* at 32.) Finally, the Internal Affairs files, containing documentation regarding the investigation and disposition of complaints, are sorted by case number. (*Id.*) It is these documents—the daily log books, the yearly reports, individual card files, and Internal Affairs files—that the plaintiffs seek, presumably for all officers on the Camden police force for the years 1988 through the present. The defendants do not dispute this categorization or description of these documents.

Defendants submit that there are at least 1200 Internal Affairs files which take up numerous file cabinets and that the defendants already have produced an index log for these cases which shows that many of them are irrelevant, as they have nothing to do with assault, battery or excessive use of force. Defendants argue that the requested discovery is overbroad, and they raise in summary fashion various privileges. For the reasons that follow and under the standards discussed above, the court finds that the defendants have not met their burden of asserting privilege and demonstrating that it applies to protect specific documents. Recognizing the sensitive nature of Internal Affairs information, however, the court follows the analysis of several courts finding that the public and government's interest in protection of the documents and the public and plaintiffs' interest in disclosure can best be balanced by ordering production of the withheld documents pursuant to a limited protective order.

With respect to these documents, Defendants appear to assert an informant's privilege in one abstract paragraph:

> Another privilege which has not yet been discussed heretofore but is certainly relevant when looking at the entire assemblage of the Internal Affairs files *En Toto* are the identities of informants, whether it be policemen within the department, or civilians whose identity should be protect-

---

**5.** Of the ten privileges previously listed by the defendants which they claim operate to protect the withheld documents, only the law enforcement privilege was argued in their brief. It is not up to the court to address the application of each of the other nine privileges upon the mere

identification of a privilege by the defendants. Accordingly, the court holds that the defendants have not met their burden of proving that any of the listed privileges protects the withheld Internal Affairs documents with respect to Plaintiffs Luna and Torres.

ed under the "informant's privilege." The discussion can generally be found in *Roviaro v. U.S.*, 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639] (1957) as well as *Black v. Sheridan [Sheraton]*, 564 F.2d 550 (D.C.C. 1977).

(Def.Br., at 17.) In his attached memorandum, Chief Pugh expresses his concern about disclosure of Internal Affairs documents because of the confidentiality of the identities of private and police informants. (Def.Ex. B.) Pugh states that if those identities were revealed, individuals providing confidential information "may feel that we have violated the trust and confidence that they had originally placed in us," and they may be chilled from providing such information in the future. (*Id.*) In Pugh's opinion, "disclosing the contents of these classified, confidential and highly sensitive files may have a devastating impact on this Department's ability to ferret out those who violate the public trust." (*Id.*)

This concern for confidentiality also is expressed by the state government, via Executive Order No. 48 (Hughes), which provides that all Internal Affairs investigations and supporting materials are considered to be confidential information, authorized to be released only by the police executive.

 As discussed herein, broad conclusions of harm are insufficient to meet the defendants' burden of proving that the withheld documents are protected by the informant's privilege. "[I]n order to assert a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims against a police defendant, the officers or the police department must do more than alert the court to the state privilege law or the generalized policies which support it." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y.1988). Defendants did not even demonstrate to the court that they have reviewed the withheld documents to determine that any confidential informants actually exist. The court understands the city and state policy concerns underlying the confidentiality of Internal Affairs documents. However, the rule providing for the application of the federal law of privilege, rather than state law, in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the

very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential. *See Kelly v. City of San Jose*, 114 F.R.D. at 655–56. The court finds that the defendants have failed to demonstrate that any of the ten privileges which they listed in their brief protect the withheld documents. As the Third Circuit has stated:

> The indiscriminate claim of privilege may in itself be sufficient reason to deny it. The court when faced with such a claim cannot make a just or reasonable determination of its validity. Even when the privilege has been asserted by the President of the United States, the Supreme Court has rejected it when it depended "solely on the broad, undifferentiated claim of public interest in the confidentiality of ... conversations" and has refused to extend deference to a President's "generalized interest in confidentiality."

*United States v. O'Neill*, 619 F.2d at 227. *See also Everitt v. Brezzel*, 750 F.Supp. at 1068 ("Broad invocations of official information privilege as to entire files or categories of documents—which do not permit plaintiff's counsel to make reasoned argument or the court to make an informed balancing decision—will result in an order compelling production of all such files or documents and awarding attorney fees.")

 The court further declines the defendants' invitation to conduct an *in camera* inspection of all the withheld documents. The purpose of the rules governing assertion of privileges is, in part, to avoid having the court expend its resources in reviewing every document that every defendant claims is privileged. The burden properly falls upon the party claiming privilege. To prevent dissemination of this sensitive material, however, the court shall order the production of the withheld documents subject to a limited protective order.

As discussed above, the relevancy of the withheld documents is clear with respect to the plaintiffs' burden of proving municipal liability under § 1983. Defendants have not provided adequate information so that the court can properly assess the documents'

protection under the *Frankenhauser* factors. Defendants shall produce within thirty (30) days from the date of this Order unredacted copies of the daily logs, yearly reports, index card files, and Internal Affairs case files, including correspondence, for all members of the Camden Police Department from 1988 through June, 1996. The defendants' relevancy and burdensome arguments can be addressed by requiring the defendants to produce to the plaintiffs only those documents that involve contentions of assault, battery, or excessive use of force. The protective order shall provide that the documents are to be shown only to the plaintiffs, plaintiffs' counsel, and plaintiffs' experts or other agents, and that the documents shall be used solely for the purposes of this litigation and shall be returned to the defendants promptly after the resolution of this litigation. If, after review of the documents, the defendants believe that a specific document contains the name of a confidential informant whose identity is entitled to protection under the standards of *Roviaro v. United States* and its progeny, they may raise that issue with the court for resolution by submitting a letter brief to Chambers explaining why the application of *Roviaro* warrants redaction of the individual's identity, along with the specific document or relevant portions of the document for the court's *in camera* inspection. *See Everitt v. Brezzel*, 750 F.Supp. 1063 (D.Col.1990); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D.Cal.1987); *Torres v. Cruz*, Civ. No. 90–346 (JBS), May 14, 1991, (Pl.Ex. B.) [6]

■ Finally, the plaintiffs request attorneys' fees and costs incurred in opposing the defendants' motion. Plaintiffs' request is based upon a successful challenge to a motion for a protective order under Fed. R.Civ.P. 26(c) and an award upon a successful discovery motion under Fed.R.Civ.P. 37(a)(4). Because the defendants' motion for a protective order will be granted in part, the court declines to award attorneys' fees and costs in favor of the plaintiffs.

## DEFENDANT POEPPEL'S MOTION

Defendant Glenn Poeppel, a New Jersey State Trooper, is named in the Consolidated and Amended Class Action Complaint based upon his alleged participation in the use of force against Plaintiffs Torres, Martinez, Arzola, and Rosario. (Compl., para. 102–105.) At issue in the motion by Defendant Poeppel is the plaintiffs' discovery request for a New Jersey State Police internal investigation report regarding the assault complaint filed by Plaintiff Torres against Defendant Poeppel. While Poeppel identified this report in his Rule 26(a) disclosures, he refused to produce it, claiming that the report is protected by the self-critical analysis and law enforcement privileges and New Jersey Executive Order # 48 (Hughes 1968), and that the plaintiffs can obtain the factual information contained in the report from other sources. Plaintiffs contend that they are only seeking the factual information contained in the report—i.e., the identities of the witnesses interviewed for the Torres investigation and a summary of their statements—and that it pertains to the incident which forms the foundation of Plaintiff Torres' claims against Defendant Poeppel; they are not interested in any evaluative opinions generated by the report.

■ The court rejects Defendant Poeppel's claim for protection under the self-critical analysis privilege. This privilege has arisen in several federal courts and many states to further the public interest in institutional self-analysis and improvement, and it generally protects investigations, assessments, and evaluations conducted on an institution-wide or department-wide basis. *See* Note, *The Privilege of Self-Critical Analysis*, 96 HARV.L.REV. 1083 (1983). Those courts that recognize a federal self-critical analysis privilege generally require three criteria to be met for the information to qualify for protection: first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the

6. Defendants also apparently object to producing "personnel files of the officers involved" and ask the court to conduct an *in camera* inspection of these files to determine what is discoverable. Because the parties have not adequately explained to the court what documents are sought with respect to these personnel files, how they are relevant, or what privilege purportedly protects them, the court does not address the request for personnel files.

public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed. *Harding v. Dana Transport,* 914 F.Supp. 1084, 1100 (D.N.J. 1996); *Todd v. South Jersey Hosp. Sys.,* 152 F.R.D. 676, 683 (D.N.J.1993); *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 426 (9th Cir.1992); *Sheppard v. Consolidated Edison Co. of New York, Inc.,* 893 F.Supp. 6, 7 (E.D.N.Y.1995).

The self-critical analysis privilege, however, is not absolute. Only evaluative opinions, and not the facts disclosed in the course of self-evaluation, may be protected. *Todd v. South Jersey Hosp. Sys.,* 152 F.R.D. at 682. The court's *in camera* review of the New Jersey State Police internal investigation report regarding the assault complaint filed by Plaintiff Torres against Defendant Poeppel reveals that the report consists largely of facts underlying the investigation. It is not the purpose of the self-critical analysis privilege to protect such facts. Further, there has been no showing that the report was undertaken as part of an institutional-wide or department-wide process of evaluation and self-improvement, nor is this information the type whose flow would be curtailed if discovery were allowed.

The court also rejects Poeppel's claim for the law enforcement privilege, under the discussion of such privilege set out above. In support of Poeppel's assertion of this privilege, counsel summarily concludes that:

> the State Police's ability to conduct effective and meaningful internal investigations would be thwarted if the information obtained and the identity of the persons interviewed were not kept confidential. Disclosure of such information would discourage citizens and members of the State Police from cooperating with the internal investigations or at a minimum cause the individuals to be less than candid. Further, the State Police itself might be more reluctant to institute reform or corrective

measures if such measures were revealed in subsequent litigation.

(Def.Br., at 9–10.)

As found above, broad boilerplate assertions of harm submitted by counsel, rather than by an executive of the New Jersey State Troopers, are insufficient to invoke the powerful and narrow privilege of law enforcement to protect this largely-factual material. Neither will an assertion of privilege resting on New Jersey Executive Order #48 (Hughes 1968) support Poeppel's request for a protective order. Accordingly, the motion of Defendant Poeppel for a protective order with respect to the investigation of Plaintiff Torres' claim of assault against Poeppel is **DENIED**. Plaintiffs' request for attorneys' fees and costs is also **DENIED**.

CONCLUSION

The Camden defendants are ordered to produce the Internal Affairs documents with respect to Plaintiffs Luna and Torres that are contained in its privilege log within thirty (30) days from the date of this Letter Opinion and Order, subject to the provisions of the limited protective order discussed above. Defendants have not met their burden of demonstrating that these documents are protected from production by a privilege recognized in federal court. The Camden defendants are further ordered to produce the daily log books, yearly reports, index card files, and Internal Affairs case files for complaints involving assault, battery or excessive use of force for each member of the Camden Police Department for the years 1988 through June, 1996. Defendants shall produce this information within thirty (30) days from the date of this Letter Opinion and Order and shall produce it subject to the provisions of the limited protective order discussed above. Defendant Poeppel is ordered to produce the investigation report into the assault complaint filed by Plaintiff Torres against Poeppel within ten (10) days from the date of this Order, also subject to the provisions of the protective order.