Jerame C. REID, Plaintiff,

v.

CUMBERLAND COUNTY,
et al., Defendants.

Civil No. 11–5841 (NLH/AMD).

United States District Court,
D. New Jersey.

Signed March 18, 2013.

Ryan Marc Lockman, Mark Frost & Associates, Philadelphia, PA, for Plaintiff.

Michael E. Benson, Buonadonna & Benson, Vineland, NJ, for Cumberland County.

John Charles Hegarty, Jasinski, P.C., West Atlantic City, NJ, for Warden Robert Balicki.

Shanna McCann, Chance & McCann LLC, Woodstown, NJ, for Officer Zamont, Officer Ballard, Officer Bermudez.

### ORDER ON INFORMAL APPLICATION

ANN MARIE DONIO, United States Magistrate Judge.

This matter comes before the Court by way of letter application [Doc. No. 46] of Plaintiff, Jerame C. Reid (hereinafter, "Plaintiff"), seeking to overrule privilege claims asserted by Defendant Cumberland County Department of Corrections (hereinafter, "CCDOC") and to compel discovery. (Pl.'s Ltr. Mem. to Overrule Privilege Claims and Compel Disc. [Doc. No. 46] (hereinafter, "Pl.'s Ltr. Mem.").) The Court has considered the submissions of the parties and held oral argument on the matter. For the reasons set forth herein,

the Court grants in part Plaintiff's request and orders CCDOC to produce the information within the personnel files of the defendant officers as set forth *infra*, the Internal Affairs ("IA") files, complaints, and disciplinary reports within the Officer Defendants' personnel files as limited *infra*; the IA files, interviews, and other records from the October 15, 2009 incident; and all complaints against all officers at CCDOC regarding excessive force from January 1, 2005 through October 31, 2009 and corresponding IA files, use of force reports from the same time period, and statistics about how many times force was used during that time period if such statistics exist.

This action involves claims under 42 U.S.C. § 1983 against Cumberland County Correctional Officers Zamont, Ballard, and Burmudez, Warden Robert Balicki, Cumberland County Department of Corrections, and Cumberland County. (Amended Compl. [Doc. No. 16].) Plaintiff alleges in his amended complaint that on October 15, 2009, while incarcerated at the Cumberland County Jail, "Officers Zamont and Burmudez entered Plaintiff's cell and, without legal justification, willfully, maliciously and intentionally punched and kicked the Plaintiff until he was curled up on the ground." (*Id.* ¶¶ 14, 20.) Plaintiff further alleges that mace was sprayed in his face. (*Id.* at ¶ 22.) Plaintiff alleges that Defendant Ballard "not only approved of the beating but also took the affirmative step of opening the cell door so that Defendants Burmudez and Zamont could at-

tack Plaintiff." (*Id.* at ¶ 24.) As a result of the alleged excessive force, Plaintiff asserts that he was treated for injuries "including but not limited to broken ribs, a fracture of his left orbital bone, and loss of sensation and nerve damage in his lips and cheek area." (*Id.* at ¶ 31.) Plaintiff asserts claims against Defendants Ballard, Bermudez, and Zamont (hereinafter, "Officer Defendants") for violations of the Eighth Amendment, violations of 42 U.S.C. § 1985, assault and battery, common law conspiracy, and intentional infliction of emotional distress; against the Officer Defendants, Warden Balicki and Cumberland County for violations of 42 U.S.C. § 1983; and against the Officer Defendants, Warden Balicki, Cumberland County, and CCDOC for violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6–2 et seq. (*Id.* at ¶¶ 36–88.)

The discovery currently at issue consists of: (1) the personnel and IA files of the Officer Defendants; (2) the IA reports, interviews or other records from the October 15, 2009 incident; and (3) "[c]omplaints by inmates (or their family members) about corrections officers using excessive force on inmates between 01/01/05 and 10/31/09, and the corresponding IA files resulting from those complaints; [ ] [u]se of force reports between 01/01/05 and 10/31/09;" and "[s]tastics about how many times force was used between 01/01/05 and 10/31/09." (Letter from Shanna McCann [Doc. No. 54] 1.) Defendant CCDOC asserts that the official information privilege [1] and the deliber-

---

1. The Court notes that the official information privilege has been referred to by various courts and parties as the "governmental privilege" and the "official information privilege." As one Court has noted:

 One small step toward conceptual cleanliness in this area consists of choosing a name for the privilege that fits the kind of information likely to be in issue in civil

rights cases against police officers or departments and that is not likely to prompt courts to adopt an inappropriate mode of analysis or to impose inappropriate procedural requirements. Among the possibilities already on the judicial landscape the two most attractive candidates are the "governmental" privilege and the "official information" privilege. I prefer the latter

ative process privilege preclude discovery of each of these three categories. CCDOC further asserts that it "clearly can demonstrate that confidentiality is vital to the decision making process in the instant case and in all internal affairs investigations." (CCDOC's Letter Br. [Doc. No. 47] 3.) Plaintiff disputes CCDOC's assertions of these privileges and asserts that Plaintiff's need for the requested discovery outweighs any justification for withholding the discovery at issue. (Pl.'s Letter Application [Doc. No. 46] 2.)

Defendant CCDOC asserts that the CCDOC has policies against disclosure of the requested materials and that the requested production "would undermine the integrity of entire CCDOC and render the administration of CCDOC's internal affairs investigations unworkable." (CCDOC's Letter Br. at 3.) In support of its assertions of privilege, CCDOC has provided an affidavit of Captain Michael Palau detailing the alleged harm [2] to CCDOC in the event the Court orders the production of the requested documents. (Second Affidavit of Captain Michael Palau [Doc. No. 47–1] (hereinafter, "Palau Affidavit").) CCDOC further asserts that the "deliberative process privilege must be applied to any and all conclusions and evaluative ma-

terials regarding this incident, and any past incidents, as they are evaluative, and disclosure of said documents could result in making the deliberative processes and all future internal affairs investigations within the CCDOC ineffective." (CCDOC's Reply Letter Br., [Doc. No. 49] (hereinafter, "CCDOC's Reply Letter"), 2.) CCDOC asserts that "CCDOC began making decisions not only about the facts of this incident but also about the type of investigation that would ensue" and that "[i]n a scenario like the one in this case, the CCDOC, for example, would have to begin a deliberative process to determine whether to undertake an administrative investigation or to refer it to the prosecutor for a criminal investigation." (*Id.* at 2.) CCDOC asserts that the written by-products of these evaluations must be kept confidential and that this confidentiality is critical to the "candor" and "honest[y]" of the internal investigation process. (*Id.* at 2.)

Plaintiff asserts that CCDOC has improperly asserted the deliberative process privilege and that Plaintiff's need for the requested documents outweighs any justification for withholding the documents. (Pl.'s Letter Application [Doc. No. 46] 2.)

---

because it is broad enough to cover all the disparate kinds of data and communications that can be involved in these types of cases, because it has not been extensively used in other, potentially misleading environments, and because the analysis courts are most likely to associate with this phrase is case by case balancing.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D.Cal.1987). The Court here will follow the reasoning of *Kelly* and refer to the privilege at issue as the "official information" privilege.

2. CCDOC articulates the following harm that would allegedly result from disclosure of the requested discovery:

Allowing the personnel files and IA reports to be exposed to litigation would create a

precedent for the discovery of investigative materials that would put the CCDOC at a grave disadvantage. When future incidents occur at their institution, which could result in disciplinary charges, those involved in the incident will not be so forthcoming with information in the investigation, if they know what they say could be used in litigation. Further, it would undermine the Internal Affairs investigative procedures, because CCDOC has an explicit policy of confidentiality during such investigations, and allowing the confidences of officers to be violated would be a detriment to CCDOC and how they handle such investigations. (CCDOC's Reply Letter at 4.) CCDOC relies on the above asserted harm to support their claims of the official information privilege.

Specifically, Plaintiff asserts that the deliberative process privilege does not apply to factual information such as interviews or statements and that CCDOC has "not provided any specifics as to why Defendants' personnel and IA files, as well as complaints and IA files related to past incidents of excessive force would fall under the deliberative process privilege." (*Id.* at 3.)

Plaintiff further asserts that CCDOC has articulated no basis other than confidentiality to support the privilege. (Id. at 5.) Plaintiff cites several cases in which courts have required the production of defendants' personnel files and prior IA files addressing complaints against defendants. (Id. at 4–5.) Plaintiff further asserts that the special investigation file pertaining to the October 15, 2009 incident must be produced in its entirety. (*Id.* at 6.) Plaintiff additionally asserts that even if the special investigation file contains confidential information, the presence of confidential information is not alone enough to prevent production of the file. (*Id.* at 6.) Based on an alleged lack of specific harm that would result from disclosure and the alleged vital nature of the requested information, Plaintiff asserts that the special investigation report should be produced. (*Id.* at 7.) Finally, Plaintiff asserts that the files and information regarding other complaints of excessive force must also be provided. (*Id.* at 7.) Plaintiff cites the Third Circuit case, *Beck v. City of Pittsburgh,* 89 F.3d 966 (3d Cir.1996) asserting that *Beck* holds such prior instances of excessive force to be highly relevant in cases asserting claims against a governmental agency.

Plaintiff further asserts in a supplemental letter that a confidentiality order would negate many of CCDOC's concerns as to the confidentiality of the documents in question.[3] (Pl.'s Letter Response [Doc. No. 50] 1.) Plaintiff further asserts that CCDOC has consented to the production of the personnel files of two non-party officers, and that based on these disclosures the withholding of the Defendant Officers' personnel files "makes no sense." (Pl.'s Letter Response 2.)

As set forth by this Court in *Hite v. Peters,* No. 07–4492, 2009 WL 1748860, at *3 (D.N.J. June 19, 2009):

As a general matter, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense [.] ..." FED. R. CIV. P. 26(b)(1). The Court may also permit for "good cause" discovery of matters that are "relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.;* see also *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 104 (D.N.J.1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, relevancy is more liberally and broadly construed at the discovery stage than at trial. *See Nestle,* 135 F.R.D. at 104.

Here, Plaintiff asserts claims against the Officer Defendants for their individual involvement in the alleged assault and against Defendants Cumberland County, Warden Balicki, and CCDOC in their supervisory roles. As to the claims against the County and Warden Balicki, Plaintiff asserts that the County and Defendant Balicki "developed policies and/or customs which caused the deprivation of Plaintiff's constitutional and statutory rights." (Amended Compl. ¶ 54.)

---

**3.** The Court signed a discovery confidentiality order in this case on December 7, 2012.

(Discovery Confidentiality Order [Doc. No. 65] Dec. 7, 2012.)

Defendant CCDOC does not dispute the relevance of the IA files as to the October 15, 2009 incident and the Court finds that the IA files and any records addressing the October 15, 2009 incident are clearly relevant to the underlying excessive force claims against the Defendant Officers.

■ Defendant CCDOC, however, disputes the relevance of the Defendant Officers' personnel files and the IA files for prior incidents of excessive force of other officers. In addressing the relevancy of the Defendant Officers' personnel files and the IA files of other instances of excessive force from January 2005 to October 2009 of non-party officers, the Court notes that "[i]n order to prove municipal liability under § 1983, a plaintiff must prove that the alleged constitutional violation resulted from an official policy or an unofficial custom." *Torres v. Kuzniasz,* 936 F.Supp. 1201, 1206 (D.N.J.1996) (citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

> A government policy or custom can be established in two ways. Policy is made when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanently and well-settled as to virtually constitute law.

*McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir.2009). Proving the existence of a custom "requires proof of knowledge and acquiescence by the decisionmaker." *Id.* "A custom of failing to investigate citizen complaints may provide a basis for municipal liability if 'a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk.'" *Mer-*

*man v. City of Camden,* 824 F.Supp.2d 581, 589 (D.N.J.2010) (quoting *Brice v. City of York,* 528 F.Supp.2d 504, 518 (M.D.Pa.2007)). In *Merman,* the district judge relying on *Beck v. City of Pittsburgh,* 89 F.3d 966 (3d Cir.1996) held that the plaintiff's reliance on internal affairs reports demonstrating questionable investigations into prior instances of alleged police misconduct was sufficient to allow the plaintiff to survive a motion for summary judgment on the issue of municipal liability. *Merman,* 824 F.Supp.2d at 590–96. Likewise, in *Beck* the Third Circuit reversed a district court's decision on a motion for judgment as a matter of law and expressly found that prior written complaints regarding the use of excessive force by an individual officer "were sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of [the officer's] violent behavior in arresting citizens...." *Beck* 89 F.3d at 973.

■ In establishing a claim of municipal liability in excessive force cases, a plaintiff must do more than "'recit[e] a number of complaints or offenses.'" *Merman,* 824 F.Supp.2d at 591. Rather, a plaintiff "must show why those prior incidents deserved discipline and how the misconduct in those situations was similar to the present one." *Id.* Here, Plaintiff alleges that Cumberland County and Defendant Balicki failed to address past instances of excessive force and that such failure created a policy or custom that resulted in Plaintiff's injuries. (Amended Compl. ¶¶ 53–61.) In light of the nature of the claims against the County, the Court finds information regarding past instances of excessive force of Defendant Officers and other officers to be clearly relevant to Plaintiff's claims.

■ Additionally, the Court finds portions of the Defendant Officers' personnel

files and IA files to be relevant discovery. *See Dawson v. Ocean Township*, No. 09–6274, 2011 WL 890692, *21–22 (D.N.J. Mar. 14, 2011) (permitting discovery of defendant officers' IA files and reviewing the personnel files *in camera* noting that " 'any past complaints, performance evaluations, disciplinary proceedings or general information about hiring and training are highly relevant' when § 1983 allegations are lodged against a particular police officer.")(quoting *V.A. ex rel. M.A. v. N.J. Nat. Guard Challenge Youth Program*, No. 06–347, 2007 WL 980453, at *3 (D.N.J. Mar. 29, 2007)). Specifically, the Court finds that the Officer Defendants' employment applications and all information regarding the training of the Defendant Officers are relevant. The Court notes that it appears that as to the Officer Defendants, Plaintiff seeks all IA files, complaints, and disciplinary reports regardless of the nature of the IA document, complaint, or disciplinary report. Defendant CCDOC challenges the relevance of the Officer Defendants' personnel files and the IA files, complaints, or disciplinary reports contained within those personnel files. The Court finds that all documents relating to excessive force, use of force, permitting the use of force by others, abuse of authority, failure to appear for training, or untruthfulness are relevant and for the reasons set forth *infra* are not privileged. However, not all IA files, complaints, or disciplinary reports of the Officer Defendants may be discoverable; rather, the scope of such discovery is determined by comparing allegations contained in Plaintiff's complaint against the nature of the action addressed by the IA files, the cause for any prior complaints against the Officer Defendants, and the cause for the discipline in any disciplinary report. Documents relating to discipline for absences or tardiness may not fall under the broad scope of discovery in this case given the nature of the claim here. The Court notes that no privilege log delineating the nature of the documents being withheld has been submitted as to the Officer Defendants' IA files, complaints, or disciplinary reports. As to IA files, complaints, or disciplinary reports, not ordered herein, Plaintiff shall provide a privilege log within thirty days from the date of entry of this order.

 The Court next examines whether the requested files are protected from disclosure under the official information privilege and the deliberative process privilege. The official information privilege is a "qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Torres*, 936 F.Supp. at 1209. "In each case that the privilege is claimed, the court is required to balance the public interest in having the information remain secret against the litigants' need to obtain discovery." *Chladek v. Com.*, No. Civ. A. 97–0355, 1998 WL 126915, at *2 (E.D.Pa. Mar. 10, 1998). "A claim of [official information] privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted 'precise and certain reasons for preserving' the confidentiality of the communications." *Torres*, 936 F.Supp. at 1210 (citing *U.S. v. O'Neill*, 619 F.2d 222, 226 (3d Cir.1980)). The official asserting the privilege must " 'provide a court with the information necessary to make a reasoned assessment of the weight of interests against and in favor of disclosure' and to allow the plaintiff 'a fair opportunity to challenge the bases for the assertion of privilege.' " *Id.* That information includes:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or

all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made. *Id.* (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D.Cal.1992)). After determining that the party asserting the official information privilege has provided a sufficient affidavit, a court then balances the government's interest in protecting the information at issue against a plaintiff's presumed right to discovery. *Id.* A claim of the official information "privilege in a § 1983 case '[m]ust be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.' " *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J.1987) (quoting *Wood v. Breier*, 54 F.R.D. 7, 13 (E.D.Wis.1972)). When weighing competing interests with respect to this privilege, courts examine the following factors enunciated *in Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973):

(1) the extent to which disclosure will discourage citizens from giving the government information;

(2) the impact upon such persons of having their identities disclosed;

(3) the degree to which governmental self-evaluation and program im-

provement will be chilled by disclosure;

(4) whether the information sought is factual or evaluative;

(5) whether the party seeking discovery is or may become a defendant in a criminal proceeding stemming from the incident in question;

(6) whether the police investigation has been completed;

(7) whether departmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is brought in good faith;

(9) whether the information sought is available through other sources; and

(10) the importance of the information sought to the plaintiff's case.

*Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D.Pa.1979) (citing *Frankenhauser v. Rizzo*, 59 F.R.D. at 344). Of these ten factors, the "weightiest factor is the importance of the information to the plaintiff's case." *Dawson v. Ocean Township*, No. 09–6274, 2011 WL 890692, at *18 (D.N.J. Mar. 14, 2011)(requiring production of relevant portions of defendant officers' personnel files and requiring a privilege log be produced for IA files due to the overly-broad nature of the request); *see also Crawford*, 469 F.Supp. at 263. In making this determination, there exists a presumption towards disclosure. *Dawson*, 2011 WL 890692, at *19.

 CCDOC has also asserted privilege under the deliberative process privilege. "The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.' " *Redland Soccer Club, Inc.*, 55 F.3d 827,

853 (3d Cir.1995) (quoting *In re Grand Jury,* 821 F.2d 946, 959 (3d Cir.1987)). In considering the application of the deliberative process privilege,

> [a]fter the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. [The Third Circuit] has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct."

*Redland Soccer Club, Inc.,* 55 F.3d at 854 (quoting *In re Grand Jury,* 821 F.2d at 959). Factors to consider when balancing the competing interests are:

i. the relevance of the evidence sought to be protected;

ii. the availability of other evidence;

iii. the 'seriousness' of the litigation and the issues involved;

iv. the role of the government in the litigation; [and]

v. the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Redland Soccer Club, Inc.,* 55 F.3d at 854 (citing *First E. Corp. v. Mainwaring,* 21 F.3d 465, 468 n. 5 (D.C.Cir.1994)). Therefore, a court conducts a two-prong inquiry to determine whether the deliberative process privilege applies. The first prong requires the court to determine whether the government has "shown that the information is both pre-decisional and deliberative" and the second prong requires the court to " 'balance the parties' competing needs' such that the privilege 'may be overcome only where the party seeking disclosure can satisfy its burden of showing that its need for the discovery outweighs the government's interest in maintaining confidentiality.' " *E.E.O.C. v. FAPS, Inc.,* No. 10–3095, 2012 WL 1656738, at *9 (D.N.J. May 10, 2012).

The Northern District of California in *Kelly v. City of San Jose,* addressed the deliberative process privilege in relation to materials generated by police departments in response to complaints of excessive force and found that the privilege did not apply. 114 F.R.D. 653, 658–59 (N.D.Cal. 1987). In *Kelly,* the district court noted that "the deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public policies." *Id.* at 658. The *Kelly* court further noted that "[t]he principle idea that inspires the privilege is that the people who contribute to *policy* formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public." *Id.* However, the district court rejected the approach by some courts to "broaden[ ] the 'deliberative process' privilege so that it can be invoked not only for communications that contribute to the formulation of important public 'policy', but also for communications that might contribute to the making of any 'decision' by a public official." *Id.* at 659. Rather, the *Kelly* court found that a "body of privilege doctrine that sweeps so broadly that virtually every datum collected by government is presumptively shielded from disclosure" is contrary to the general idea of public access to governmental decisions. *Id.* Here, the Court finds the *Kelly* analysis instructive in light of the Third Circuit's decision in *Redland,* which ex-

pressly stated that " '[t]he deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of *law* or *policymaking*, reflecting opinions, recommendations or advice.' " *Redland Soccer Club, Inc.,* 55 F.3d at 853 (emphasis added). The Court finds that as in *Kelly,* the " 'deliberative process' privilege should be limited to communications designed to contribute, directly, to the formulation of important public policy" and such a limitation does not protect "most of the kinds of information police departments routinely generate." *Id.* at 659; *see also Charles v. City of New York,* No. 11–cv–0980, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) (finding that the deliberative process privilege did not apply partly because "the documents were not created to assist a governmental agency in the formulation of a specific decision on policy," but rather for the "routine process to determine whether disciplinary action was warranted against the defendant officers ...").

Turning to the discovery at issue, the Court notes that CCDOC has provided an affidavit of Captain Michael Palua dated June 20, 2012, to support its assertion of the official information privilege. However, Captain Palau's affidavit does not explain his role at CCDOC other than to note that he is a Captain. Therefore, Defendant CCDOC has not demonstrated that Captain Palua is the head of the agency asserting the privilege or head of the department dealing with internal affairs investigations and personnel files who would be responsible for reviewing the documents at issue before asserting the privilege. *See Torres,* 936 F.Supp. at 1210 ("A claim of [official information] privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted 'precise and certain reasons for preserving' the confidentiality of the com-

munications.") (citing *U.S. v. O'Neill,* 619 F.2d at 226). Additionally, it does not appear from the affidavit that Captain Palua has reviewed the IA files for prior instances of excessive force. However, while there exists a sufficient basis to reject Captain Palua's affidavit based on his failure to address whether he is a department head or the failure to review all the documents at issue, the Court will consider the affidavit and conduct the *Frankenhauser* balancing test for the three categories of requested documents. *See Frankenhauser,* 59 F.R.D. at 342 n. 2 (permitting the privilege to be asserted by counsel and not requiring it to be asserted by the head of the department); *see also U.S. v. O'Neill,* 619 F.2d at 227 (noting without disapproval that *Frankenhauser* permitted the privilege to be invoked by an attorney as opposed to a department head and holding that the Circuit did not need to decide whether the department head must always be the one to assert the privilege, but holding that the department head must review the documents.) As noted *supra,* the three categories of requested documents are: (1) the personnel and IA files of the Officer Defendants; (2) the IA files, interviews or other records from the October 15, 2009 incident; and (3) complaints against all officers at CCDOC regarding excessive force from January 1, 2005 through October 31, 2009 and corresponding IA files, use of force reports from that same time period, and statistics about how many times force was used during that time period.

### Personnel and IA Files of Defendant Officers

In Section 1983 cases raising claims of excessive force, courts have permitted discovery of the relevant portions of defendant officers' personnel files. *See, e.g. V.A. v. N.J. Nat. Guard Challenge Youth Program,* No. 06–347, 2007 WL 980453, at

*3 (D.N.J. Mar. 29, 2007) (ordering that personnel files of defendant officer be produced to plaintiff and noting that past complaints, performance evaluations, disciplinary proceedings or general information about the defendant officer are highly relevant, but that personal information is not relevant); *Jones v. DeRosa*, 238 F.R.D. 157, 166 (D.N.J.2006) (ordering production of IA files and defendant officers' personnel files in Section 1983 suit arising from an allegedly racially motivated traffic stop). For example, in *Dawson v. Ocean Township*, the court addressed defendants' assertion of the official information privilege and noted that " '[i]f the information contained in defendant's personnel file is relevant to issues in the case, the information must be produced because there is no legal authority that bars a plaintiff from discovering relevant information in a defendant's personnel file.' " 2011 WL 890692, at *21 (quoting *V.A. ex rel. M.A.*, 2007 WL 980453, at *3.) The *Dawson* court further noted that " 'any past complaints, performance evaluations, disciplinary proceedings or general information about ... hiring and training are highly relevant' when § 1983 allegations are lodged against a particular police officer[,]" but that "personal information ... such as benefits, salary, or medical information [are] not relevant." *Id.* In *Dawson*, the court ordered the personnel files to be produced *in camera* for the Court to determine what portions were personal privileged information and what information was relevant. *Id.* at *22.

Here, at oral argument, the request for the personnel files of the Officer Defendants was limited by Plaintiff to include job applications, disciplinary records, complaints by other officers, inmates, or civilians for violations not limited to excessive use of force, and any IA files contained in the Officer Defendants' personnel records. Plaintiff stated that pay records, salary,

and medical records of the Officer Defendants were not requested. Additionally, the Court rejected CCDOC's unsupported argument that the request for personnel files was overbroad and burdensome.

In addressing the personnel files of the Officer Defendants, Captain Palua asserts in his affidavit that disclosing the files would infringe on the Officer Defendants' privacy rights, that the harm to the officers would outweigh benefit to the Plaintiff because the personnel records do not "provide evidence that the officer is more likely to use excessive force in another setting," and that disclosure is unfair because the files contain charges that were dismissed or not sustained. (Palau Affidavit ¶ 4(a).) Captain Palau further asserts that even disclosing the personnel files subject to a carefully crafted protective order would "create a substantial risk of harm to significant governmental or privacy interests, because any disclosure of these materials violates our own policies and procedures." (*Id.* ¶ 5.) Captain Palau additionally asserts that if CCDOC discloses personnel files in violation of the policies of CCDOC "adherence to [CCDOC confidentiality] policies will diminish, followed by decreased adherence to CCDOC policies in general. Adherence to CCDOC policy is particularly important in a correctional setting." (*Id.* ¶ 6.)

■■■ Despite Captain Palau's assertions, the Court finds that, on balance, the *Frankenhauser* factors weigh in favor of production. First, the CCDOC has not adequately addressed how disclosure of the personnel files will discourage citizens from giving information to the government. Second, even if disclosure of the personnel files will disclose the identities of any individuals other than the Defendant Officers, any potential harm resulting from the disclosure of those interviewed in

the investigations is negated by the confidentiality order signed into place by the Court on December 7, 2012. Third, Captain Palau's affidavit focuses on the impact disclosure would have on confidentiality policies and the other general policies of CCDOC, but does not sufficiently address how these policies affect governmental self-evaluation and program improvement. However, the Court notes that the disclosure of personnel files pursuant to a "Court Order subpoena" is contemplated by CCDOC's confidentiality policies. (Palau Affidavit, Ex. C, § V.C.2.) Furthermore, while Captain Palau asserts that personnel records do not "provide evidence that the officer is more likely to use excessive force in another setting," and that disclosure is unfair because the files contain charges that were dismissed or not sustained, the Court notes that the manner in which decisionmakers decide to dismiss or not sustain charges is relevant to Plaintiff's claims against Defendant Balicki and the County Defendants. *See Merman*, 824 F.Supp.2d at 590–96 (noting that civilian complaints which were not sustained and did not result in disciplinary action were relevant to proving a custom of permitting excessive force and sufficient for Plaintiff to survive a summary judgment motion). Therefore, disclosure of the Officer Defendants' personnel files in accordance with an order from this Court would not be in contradiction of CCDOC's confidentiality policy, and therefore, would not have the detrimental effect on the general CCDOC policies as asserted in Captain Palau's affidavit.

In addressing the fourth factor, whether the information sought is factual or evaluative, to the extent evaluative material exists in Officer Defendants' personnel files or the IA documents contained with those files, the Court finds such evaluative material to be relevant and discoverable as to Plaintiff's claim against Cumberland County. *See Scouler*, 116 F.R.D. at 497 ("when a § 1983 civil rights claim is made, the extent of the supervisors' knowledge of and participation in the acts of their subordinates determines the scope of the municipality's liability [ ]. Although defendant resists production of this information on the basis that some of the documents are evaluative and should not be produced, that argument is not sustainable under the case law."). Evaluative materials may be withheld following a "strong showing that confidentiality is vital to the decision-making process of the municipality or would otherwise substantially harm the public interest." *Id.* Here, CCDOC has not made such a showing.

The fifth, sixth, and seventh factors address potential and ongoing investigation and criminal or disciplinary hearings resulting from the Officer Defendants' alleged conduct. CCDOC has not asserted the existence of any such ongoing investigation or proceeding. Under the eighth factor, the Court finds that Plaintiff's complaint was permitted proceeded past sua sponte dismissal and was therefore brought in good faith. Under the ninth factor, the Court notes that even if depositions may provide some of the information, the Court finds that a deposition over three years after the incident is no substitute for statements and evidence taken immediately following the incident. Finally, the Court finds that the tenth factor, the importance of the information to Plaintiff's case weighs heavily in favor of disclosure. *See Dawson*, 2011 WL 890692, at *21 (" 'any past complaints, performance evaluations, disciplinary proceedings or general information about ... hiring and training are highly relevant' when § 1983 allegations are lodged against a particular police officer."). On balance, the Court finds that the *Frankenhauser* factors weigh in favor of produc-

tion of the Officer Defendants' personnel files, the IA files, complaints, and disciplinary reports contained within those personnel files as limited *supra*. Consequently, the Court rejects Defendant CCDOC's assertion of the official information privilege as a basis to withhold the personnel files and all IA files, complaints, and disciplinary reports within the personnel files of the Officer Defendants. As Plaintiff has limited his request to exclude all personal information such as medical history, salary, and payment history and to include all nonpersonal information within the personnel files, the Court need not review the information *in camera* as in *Dawson*. Therefore, the information within the personnel files and any complaints, IA files, and disciplinary reports as limited *supra* within the Officer Defendants' personnel file must be produced directly to Plaintiff. For the remaining IA files, complaints, and disciplinary reports in the Defendant Officers' personnel file that do not fit within the specific type of incident ordered herein, Defendant CCDOC shall provide Plaintiff and the Court with a privilege log addressing these withheld documents within thirty days from the date of entry of this Order.

▪▪▪ Likewise, the Court finds the deliberative process privilege to be inapplicable to documents contained within the Officer Defendants' personnel files and to Defendants' IA files, complaints, and disciplinary reports addressed above. "The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Redland Soccer Club, Inc.*, 55 F.3d at 853 (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)). The Court here finds that in Section 1983 cases the deliberative process privilege applies in the limited situation where the documents at issue contribute to the formulation of important public policy or new law. *Kelly*, 114 F.R.D. at 659; *see also Charles v. City of New York*, No. 11–cv–0980, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011)(finding in a 42 U.S.C. § 1983 case that the deliberative process privilege did not apply to an internal affairs bureau investigative report and a supervisor's case review memo because the documents contained only factual and investigative information and because "the documents were not created to assist a governmental agency in the formulation of a specific decision on policy," but rather for the "routine process to determine whether disciplinary action was warranted against the defendant officers . . .").

Defendant CCDOC here has not identified any public policy being formulated or any law being created that would justify the application of the deliberative process privilege to the documents at issue. In fact, CCDOC asserts that their invocation of the deliberative process privilege is necessary because "CCDOC began *making decisions* not only about the facts of this incident but also about the type of investigation that would ensue" and that "[i]n a scenario like the one in this case, the CCDOC, for example, would have to begin a deliberative process to determine whether to undertake an administrative investigation or to refer it to the prosecutor for a criminal investigation." (CCDOC's Reply Letter 2 (emphasis added).) As the CCDOC acknowledges that its assertion of the deliberative process privilege is to protect a decision-making process and not deliberations regarding the formulation of public policy or law creation, the Court finds that the deliberative process privilege is not applicable and not a basis upon which CCDOC can justify withholding otherwise discoverable information. *See Charles*, 2011 WL 5838478, at *2 ("recommendations concerning disciplinary review

of a discrete incident do not involve the policy formulations protected under the deliberative process privilege"). Moreover, as the policymakers' knowledge of and reaction to similar incidents of excessive force are relevant to the Plaintiff's allegations of a policy or custom of permitting excessive force, the Court finds that were the deliberative process to be applicable, Plaintiff's need for the evidence would overcome the CCDOC's assertion of the privilege. Therefore, the Court shall order the production of all relevant information contained in the Officer Defendants' personnel files as limited *supra.*

### IA Files and Other Information from the October 15, 2009 Incident

 The Court next addresses the IA files concerning the incident in question. As noted *supra,* the IA files and other documents related to the incident are relevant. Although "[s]ome courts have concluded that evaluative comments and opinions expressed by officers conducting internal affairs investigations should be protected by a privilege that is almost absolute," *Kelly,* 114 F.R.D. at 664, the Kelly court stated that "[i]n so doing, these courts make a mockery of the whole concept of balancing by converting just one of the *Frankenhauser* factors (number 4) into a virtually dispositive consideration." *Id.* at 664. In *Kelly,* the court held that such evaluative material should be presumptively discoverable. As in *Torres,* the Court finds that "[e]valuative opinions in Internal Affairs reports are not absolutely privileged by *Frankenhauser.* In fact, supervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. § 1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality." 936 F.Supp. at 1211. Therefore, absent a showing that evaluative material's rele-

vance is outweighed by a specific harm that would ensue from such material's disclosure, such material is discoverable.

In addressing IA files generally, Captain Palau asserts in his affidavit that the IA files are internal confidential documents under the county policy. (Palau Affidavit ¶ 4(b).) Captain Palau further asserts that the individual defendants received an administrative advisement before being questioned which stated that "a department member may be compelled to give statements under threat of discipline or discharge but those statements may not be used in a criminal prosecution of the individual officer, should that occur." (*Id.*) While Captain Palau acknowledges that the administrative advisement does not shield the officers from civil liability, he asserts that the acknowledgment "raises privacy concerns with the disclosure of those documents." (Id.) Additionally, Captain Palau asserts that disclosure of the IA investigation files under a confidentiality order would not be enough to prevent harm to governmental or privacy interests because such disclosures would violate CCDOC's policies and procedures. (*Id.* ¶ 5.) Captain Palau further asserts that disclosure of the IA files, especially the investigative interviews of the Defendant Officers, would discourage individual officers from giving CCDOC information in the future and that the potential for such disclosure would force officers to choose between either refusing to answer questions thereby losing their jobs or the threat of being sued. (*Id.* ¶ 6.) Captain Palau also asserts that the disclosure of other individuals who gave statements would create a conflict of interest. Specifically, Captain Palua states "[w]ith regard to the others who gave statements, the inmates, for example, the impact upon such persons of having their identities disclosed creates a conflict of interest because of Jerame Reid's own admission that he

was beaten up by other inmates." (*Id.* ¶ 8.) Captain Palau asserts that the disclosure of evaluative material is contrary to CCDOC's confidentiality policies and that all the information requested could be retrieved from other sources such as depositions. (*Id.* ¶ 9–10.)

 In addressing the *Frankenhauser* factors, the Court finds that the factors weigh in favor of production of the entire investigative report and any IA files created concerning the October 15, 2009 incident. The Court further finds that the first and second factor, the effect on citizens and whether disclosure will discourage citizens from giving information to the government, do not weigh against production of the investigative reports. CCDOC has not adequately stated how non-party citizens will be affected by such disclosure or sufficiently stated how such citizens will be discouraged from giving information in the future. While Captain Palua asserts that a conflict of interest would arise from such disclosure, the Court finds that this alleged conflict of interest does not support non-disclosure.

As to the third and fourth factors, the Court finds that the evaluative materials contained in the IA reports regarding the incident in question and reports addressing claims of excessive force from dates prior to the incident in question to be highly relevant to Plaintiff's *Monell* claim against the County Defendants and Plaintiff's claims against the Officer Defendants and that such evaluative materials may be necessary for proving municipal liability. *Torres,* 936 F.Supp. at 1211. The Court notes Defendant CCDOC's assertions of harm resulting from the disclosure of such evaluative material, but finds that the assertions of harm to be outweighed by Plaintiff's need for the information. Specifically, the Court notes that CCDOC has a policy requiring defendants to answer

questions posed to them in an IA investigation or risk dismissal from the Department of Corrections. (Palau Affidavit, Ex. E.) Therefore, to the extent Captain Palau asserts that disclosure of the IA files will limit responses to future IA investigations, the Court finds this inconsistent with stated CCDOC policy. Additionally, the Court notes that the stated policy of CCDOC is that IA investigations "are to be kept with strict confidentiality." (*Id.,* Ex. B.) However, with a confidentiality order now in place, the Court finds that any potential harm arising from the production of the investigative reports and IA files for the incident in question will be greatly reduced through compliance with the confidentiality order.

As stated above, there has been no articulation of any current criminal or disciplinary proceedings or investigations that would cause factors five, six or seven to weigh against disclosure. Under factor eight, Plaintiff's suit appears to have been brought in good faith as stated above. While Plaintiff may take the deposition of those involved, there is no substitute for the interviews and statements taken immediately following the incident, and therefore, the ninth factor does not weigh against production.

Under the final factor, the Court notes that the investigative reports and IA files for the incident in question are clearly relevant and important to Plaintiff's claims against the Officer Defendants and are likely relevant to the *Monell* claims against the municipal defendants to the extent the report or IA files mention similar patterns or instances of excessive force or provide evidence of prior knowledge of Defendant Officers' propensity for such actions. Therefore, the Court finds that the investigative reports and the IA files for the incident are discoverable and shall be produced. As stated above, the delibera-

tive process privilege is inapplicable to the documents currently at issue in this case and does not prevent production.

### Complaints about Excessive Force, Statistics of Excessive Force, Use of Force Reports, and Related IA Files

The scope of the request for prior complaints was refined as stated *supra* to the production of all complaints against all officers at CCDOC regarding excessive force from January 1, 2005 through October 31, 2009 and corresponding IA files, use of force reports from that same time period, and statistics about how many times force was used during that time period. Plaintiff stated that the personnel files for non-party officers who were involved in prior instances of excessive force were not requested. Also at oral argument, the Court rejected Defendant's claim that the request was overbroad. In rejecting CCDOC's overbroad argument, the Court stated that because Plaintiff is attempting to establish a custom, pattern or practice in an excessive force claim, Plaintiff's requests for documents relating to prior complaints were sufficiently narrowly tailored to the claim. Defendant submitted to the Court an affidavit of Sergeant Walter Wroniuk setting forth the time it would take to produce the aforementioned documents. (Aff. of Sgt. Wroniuk [Doc. No. 54–1] July 27, 2012.)[4] The affidavit provided the following information:

(1) Complaints by inmates or their family members about correction officers using excessive force on inmates between 01/01/05—10/31/09 would take approximately 40 business hours to extract. Items are located in archives in the "Old Jail Basement".

(2) IA files of any staff members would take approximately 24 business hours to extract. Items are located in a secure file room in boxes.

(3) Use of force reports would take approximately 24 business hours to extract. Reports are held in several locations.

(4) Statistics would take approximately 16 business hours to produce.

(5) An additional 36 business hours would be needed to separate and copy documents requested once they were pulled from their various locations. It would take at least two officers and one secretary to perform this task.

(6) Costs of photocopies would be $.75 for the first ten copies, $.50 for the next ten copies, and $.25 for the remaining documents.

*Id.* at 2. Defendant CCDOC submitted a supplemental letter stating that Sgt. Wroniuk's department consists of himself, one other officer, and a secretary. (Letter from Shanna McCann [Doc. No. 56].) Defendant CCDOC further stated in its supplemental letter that "if required to perform the tasks delineated in his affidavit, this would effectively 'shut down' their department[,]" and that "Sgt. Wroniuk's Department handles investigation and training within CCDOC and their duties currently require all three of those individuals to perform their daily tasks." *Id.*

"[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there

---

4. The affidavit of Sgt. Wroniuk was originally titled "Third Affidavit of Captain Palau", but was marked through and corrected with a pen. A number of handwritten corrections were made throughout the affidavit.

exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *EEOC v. FAPS, Inc.*, No. 10–3095, 2012 WL 1656738, at *23 (D.N.J. May 10, 2012). However, before a court will entertain a party's objection based on burdensome grounds, the party asserting the objections must submit an affidavit or offer evidence which reveals the nature of the burden. *Valentin v. School District of Philadelphia*, No. 2:11–cv–4027, 2012 WL 676993, at *2 n. 2 (E.D.Pa. Mar. 1, 2012).

 Here, Defendant CCDOC has submitted an affidavit asserting the alleged time it will take CCDOC to respond to the instant request and a letter indicating the burden responding would have on CCDOC. However, the Court finds CCDOC's affidavit and letter to be insufficient. While the affidavit asserts projected times necessary to produce the requested information, Defendant CCDOC has provided insufficient detail to support these alleged times. The affidavit contains no information regarding the extent or volume of the filing system within which these documents are stored, the cost of extracting the files, or the reason why the files are kept in such a manner as to make extraction such a time intensive undertaking. The Court finds that the affidavit provided by Sgt. Wroniuk does not adequately demonstrate that the request for the prior instances of excessive force and accompanying documentation is overly burdensome.

However, even were the Court to find Sgt. Wroniuk's affidavit to be sufficient, the Court finds that Plaintiff's request is not overly burdensome. The fact that CCDOC alleges the production of these requests would take approximately 140 hours is not alone sufficient to establish an undue burden necessary to prevent discovery. *See Thomas v. Cate*, 715 F.Supp.2d

1012, 1033 (E.D.Cal.2010) (finding that 111 hours of data review is not an undue burden on the state) (citing "*Azimi [v. U.P.S., Inc.]*, 2007 WL 2010937 at *7–8, 2007 U.S. Dist. LEXIS 49762 at *24–26 (D.Kan.2007) (responding party's estimate that it would take more than 100 hours and at least two months to locate and print information sought held insufficient to establish undue burden); *Beach v. City of Olathe*, 203 F.R.D. 489, 493–94 (D.Kan.2001) (overruling objection where responding to interrogatory required hundreds of hours of document review); *Weller v. Am. Home Assur. Co.*, 2007 WL 1097883 *4–5, 2007 U.S. Dist. LEXIS 27284 *12–14 (N.D.W.Va.2007) (overruling objection despite responding party's affidavit which stated response would entail 'at least hundreds of man hours')"). Given the relevance and importance of the prior instances of excessive force to Plaintiff's *Monell* claim against the County Defendants, the Court finds that Defendant CCDOC has not sustained an unduly burdensome argument in light of Plaintiff's claims. *See Torres*, 936 F.Supp. at 1211 ("supervisory opinions and responses to civilian complaints are highly relevant to proving municipal liability under 42 U.S.C. § 1983 for a municipal entity's alleged failure to adequately respond to complaints of police brutality") (citing *Beck*, 89 F.3d 966).

 Moreover, the fact that the IA reports and the complaints are kept in the "Old Jail Basement" and several other locations, and the fact that the department responsible for conducting such a search is not adequately staffed to handle the necessary search, do not excuse production of those documents when the location of the documents and the understaffing of the department is partly the cause of any burden on CCDOC. Permitting a party to avoid discovery simply by keeping files in a disorderly or unsearchable manner

would improperly benefit the producing party while precluding the requesting party from obtaining clearly relevant material. *See Weller*, 2007 WL 1097883, at *5 (noting that a party cannot argue undue burden if the burden is caused by that party's decisions regarding document storage or review of documents and stating that "[a]s Justice Cardozo stated long ago, it is a fundamental principle of the law that ' "[h]e who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned." ' ") The Court rejects CCDOC's burdensome argument. Having previously found that neither the official information privilege, nor the deliberative process privilege, prevent discovery of IA files related to excessive force claims, the Court finds the analysis of these privileges stated *supra* to be equally applicable to this last set of documents. Consequently, the Court finds that the CCDOC may not withhold documents in this last category based on either privilege.[5]

The Court notes that CCDOC cites *Dawson*, 2011 WL 890692 and *Deluccia v. City of Paterson*, No. 09–703, 2012 WL 909548 (D.N.J. Mar. 15, 2012), which denied the plaintiffs' broad requests for production of non-party officers' IA files, but ordered a privilege log of the complaints and investigations regarding non-party officers' for the type of violations at issue, and *Knight v. Musemici*, No. 11–280, 2012 WL 1107708 (D.N.J. Mar. 30, 2012), which denied all together the plaintiff's request for the dismissed and not sustained complaints and investigations of officers not involved in the incident at issue. (CCDOC's Letter Br. 3.) However, the Court here finds that Plaintiff's request for five years of internal affairs documents relating to excessive force is not excessive or overbroad and that Plaintiff has provided the Court sufficient context within which to order production of the requested documents. "Moreover, it is well established that the management of discovery is a matter within the discretion of the district court." *Knight*, 2012 WL 1107708, at *4; *see also Deluccia*, 2012 WL 909548, at *2 (noting that there is no controlling law on this issue and stating that "[w]here there is no controlling rule, a Magistrate Judge is afforded great discretion ...."). Therefore, for the reasons set forth above, Defendant CCDOC must produce the requested statistical analyses of excessive force complaints from January 2005 through October 2009 if any such analysis exists, the excessive force complaints themselves from that time period, the dispositions of those complaints, and related IA files to Plaintiff.

All documents ordered to be produced by this Order shall be produced within thirty (30) days from the date of entry of this Order.[6]

---

5. To the extent the IA files of the previous instances of excessive force contain information regarding officers who have been indicted or who are currently on trial for their use of force, (*see* CCDOC's Letter Br. at 5) the Court finds the confidentiality order to be sufficient to protect against any concerns regarding the broad dissemination of those documents.

6. The Court notes that in *Medina v. Cumberland County*, No. 11–905, 2011 WL 1750738 (D.N.J. May 3, 2011), the District Court dismissed CCDOC noting that because CCDOC was a sub-unit of the County it could not be sued as a separate entity under § 1983. Here, CCDOC is presently a party to the case and is the entity opposing Plaintiff's application. At oral argument on this application, separate counsel represented the County and CCDOC and counsel for CCDOC argued in opposition to Plaintiff's application. Therefore, to the extent CCDOC is not a proper party in this case and to the extent the documents ordered to be produced are in the possession custody or control of the County,

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 18th day of March 2013,

**ORDERED** that Plaintiff's application to overrule privilege claims and compel discovery of documents shall be, and is hereby, *GRANTED;* and it is further

**ORDERED** that Defendant CCDOC shall produce the documents and privilege log set forth herein within thirty (30) days of the entry of this Order.

the Court finds that this Order applies equally to Defendant Cumberland County.